EANES *v.* CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS — ORDINANCES — STATUTES — BARBER SHOPS.

Municipal ordinance relative to barber shops which fixes open hours but is otherwise quite similar to State statutes regulating barber shops *held,* not invalid because of fact that it complements statutory regulation (2 Comp. Laws 1929, §§ 8691–8714 as amended; Detroit ordinance regulating barber shops).

2. CONSTITUTIONAL LAW—ORDINANCES—DUE PROCESS—BARBER SHOPS —OPEN HOURS.

Ordinance relating to barber shops *held,* unconstitutional as a denial of due process of law in so far as it fixes hours when such shops may be open for business, such feature bearing no legitimate or reasonable relation to the public health or general welfare nor necessary to protect barbers and their employees from long hours of labor or to facilitate sanitary inspection (U. S. Const. Am. 14; Mich. Const. 1908, art. 2, § 16, art. 5, § 29; Detroit ordinance regulating barber shops).

3. COSTS—PUBLIC QUESTION—ORDINANCES—BARBER SHOPS.
    No costs are awarded in suit to determine constitutionality of
    provisions of an ordinance relative to hours in which barber
    shops within a city may remain open, a public question being in-
    volved (Detroit ordinance regulating barber shops).

BUSHNELL and POTTER, JJ., dissenting.

Appeal from Wayne; Sample (George W.), J., presiding. Submitted January 13, 1937. (Docket No. 63, Calendar No. 39,297.) Decided April 29, 1937.

Bill by William O. Eanes and others against City of Detroit, a municipal corporation, and others to restrain the enforcement of an ordinance relating to barber shops and to have the ordinance declared void. Decree for plaintiffs. Defendants appeal. Affirmed.

*Lewis & Watkins* (*James K. Watkins* and *Clarence J. Boldt, Jr.*, of counsel), for plaintiffs.

*Raymond J. Kelly*, Corporation Counsel, and *Nathaniel H. Goldstick*, Assistant Corporation Counsel, for defendants.

WIEST, J. This is review of a decree of the Wayne circuit court enjoining enforcement of an ordinance of the city of Detroit providing for the licensing of barbers and the regulation and inspection of barber shops, inclusive of open shop hours. The ordinance prohibits operation of a barber shop in the city without a license issued by the mayor; requires a yearly application to the city department of health, stating the name of the applicant, location of shop, date of registration with the state board of examiners of

barbers, and containing an agreement to conform to the rules of the department of health, and the State board of examiners of barbers; fixes the license fee at $3, and requires a shop to be in a clean, well lighted and ventilated room, and to have running hot and cold water, sewage connection and ample toilet accommodations. It also provides that:

"All barber shops operating in the city of Detroit shall be open only between eight o'clock in the morning and seven o'clock in the evening; except that on Saturdays and the day preceding any legal holiday, barber shops may remain open until nine o'clock in the evening."

The penalty for any violation is a fine not to exceed $100 or imprisonment for not more than 90 days, or both fine and imprisonment.

The statutory regulations of barbers and barber shops (2 Comp. Laws 1929, §§ 8691–8714 as amended), do not fix the open hours of barber shops but otherwise are quite similar to the provisions of the ordinance. At least there is no conflict. The State having entered the field, may the city, by ordinance, duplicate or complement statutory regulations?

In *National Amusement Co.* v. *Johnson*, 270 Mich. 613, we quoted the following from 43 C. J. p. 219:

" 'Where no conflict exists, both laws stand. * * * As a general rule, additional regulation to that of a State law does not constitute a conflict therewith.' "

See, also, *City of Milwaukee* v. *Childs Co.*, 195 Wis. 148 (217 N. W. 703).

This brings us to consideration of the provision of the ordinance fixing open shop hours. The question of municipal power to fix the hours during which barber shops may operate is not new. The scheme of

the ordinance in fixing open hours for barber shops has been held void by many judicial pronouncements. Some few adjudications sustain the power, *Falco* v. *City of Atlantic City,* 99 N. J. Law, 19 (122 Atl. 610); *Wilson* v. *City of Zanesville,* 130 Ohio St. 286 (199 N. E. 187), but in weight, number and reasoning the cases to the contrary are overwhelming.

We cite and quote from a few of the cases.

In *State, ex rel. Newman,* v. *City of Laramie,* 40 Wyo. 74 (275 Pac. 106), a city ordinance fixing open hours for barber shops was quite like that of the ordinance at bar, and was enacted under the following statutory authority:

" 'Power and authority is hereby granted to each incorporated city or town within the State, to license, regulate and control barber shops.' "

The court held the fixing of hours void. The reasoning in that case answers the argument in behalf of the city in this case and points out the inapplicability of the holding in *Falco* v. *City of Atlantic City, supra.*

In *Ganley* v. *Claeys,* 2 Cal. (2d) 266 (40 Pac. [2d] 817), a city ordinance closed barber shops from 6:30 p. m. until 8 a. m., except Saturdays and days preceding specified holidays. The court held the ordinance void, as having no reasonable relation to the assigned purpose of public health and pointed to the adequate statutory regulations to that end.

In this State the legislature has provided adequate statutory regulations relative to sanitation and the public health.

In *State, ex rel. Pavlik,* v. *Johannes,* 194 Minn. 10, 21 (259 N. W. 537), the city ordinance closed barber shops from 6:30 p. m. until 8 a. m., except Satur-

days and days preceding holidays. The court held the ordinance void, and we quote from the opinion:

"In so far as such ordinances may provide reasonable sanitary standards, regulation, and inspection, the public interest is involved and is vitally affected. There it stops, and private rights need yield no further. The public interest is not further involved. We hold that the ordinance before us, in so far as it fixes the hours when barber shops may be open for business, is invalid as in violation of the due process clauses of our own and the Federal constitution. That feature of the ordinance bears no legitimate or reasonable relation to the public health or general welfare.

"If to serve their own purpose those engaged in the barber business desire to effect what is sought to be effected by this ordinance, they will have to accomplish it by friendly arrangement within the membership of those engaged in the business and not by resort to compulsory legislation."

It was also said, p. 17:

"One of appellant's principal contentions is that the restriction here under consideration is necessary to protect barbers and their employees from long hours of labor. The complete answer to that is that most shops are now successfully operating under an eight-hour day for employees and that the master barbers are subject to the same hours. No limitation of business hours is required, nor does such limitation assist in enforcing short hours for employees. If hours of employment are now staggered over a 10½ or 11½ hour day, they may be as readily staggered over any other arrangement.

"Closing shops at an early hour can in no way facilitate sanitary inspection. The shops may readily be inspected at any time and need not be closed for that purpose. Upon what ground then can we justi-

fy this interference with the freedom of the individual to operate his business in his own way and according to his own ideas of good business.

"Eight times have such ordinances been before the courts of last resort in this country, and seven times have they been held invalid as unjustifiable attempts to exercise the police power."

The ordinance at bar goes beyond regulation of hours one person may work for another. As said of a like ordinance in *Knight* v. *Johns,* 161 Miss. 519 (137 South. 509):

"A barber's working hours can be effectually regulated, without closing the shop in which he works, by an ordinance specifically designating his hours of work. To close the shop, therefore, in order to prevent overwork by barbers therein, unnecessarily interferes with its operation, and is unreasonable."

That case also answers the claim of need of fixing open shop hours for the convenience of sanitary inspectors.

In support of ordinances of like character the case of *Falco* v. *City of Atlantic City, supra,* has frequently been cited and seldom followed. That case, in general application, is contrary to the great weight of authority.

In *Patton* v. *City of Bellingham,* 179 Wash. 566, 572 (38 Pac. [2d] 364, 98 A. L. R. 1076), a statute delegated power to municipalities of certain classes to fix, by ordinance, the hours and time of opening and closing barber shops on week days and the city of Bellingham enacted an ordinance making it unlawful to open a barber shop earlier than 8 o'clock a. m., or to close the same later than 6 o'clock p. m. on week days, other than Saturdays, or to close it

later than 7 o'clock p. m. on Saturdays or days preceding a holiday. The court said:

"The question, then, presents itself here whether the provision with reference to the time of opening and closing barber shops is reasonable and proper for the protection of the health and general welfare of the public, or whether it is unreasonable and arbitrary and an unlawful interference with the rights of an individual. 　*　*　*

"The occupation of barbering is a lawful business, and so far from being an obnoxious one, it is now considered well-nigh indispensable. It may be conceded, as we have already conceded, that its relation to the public is such as to render it amenable to proper regulation, to the end that the public may be protected against the spread of communicable diseases and unsanitary practices. In so far as the ordinance seeks to require that such shops shall be operated in a clean and sanitary manner, and by clean and competent barbers, it is a wholesome measure and a valid exercise of the police power."

The court held: "In our opinion, the provisions of the ordinance requiring the shops to close at specified hours bear no reasonable relation to the public health or general welfare," and that the ordinance was unreasonable and arbitrary and, consequently, void.

Extracts from the opinion of Mr. Justice Field in *Soon Hing* v. *Crowley,* 113 U. S. 703, 708 (5 Sup. Ct. 730), have been cited to other courts in support of ordinances like the one at bar. The case, when read, carries no such support. The reason there was a public one, made necessary on account of fire hazards from laundries operated in the night time.

The court stated:

"And it is of the utmost consequence in a city subject, as San Francisco is, the greater part of the

year, to high winds, and composed principally within the limits designated of wooden buildings, that regulations of a strict character should be adopted to prevent the possibility of fires. That occupations in which continuous fires are necessary should cease at certain hours of the night would seem to be, under such circumstances, a reasonable regulation as a measure of precaution.''

The want of analogy between that case and the one at bar is manifest. This is also true of the like case of *Barbier* v. *Connolly,* 113 U. S. 27 (5 Sup. Ct. 357).

In *People* v. *Bellet,* 99 Mich. 151 (22 L. R. A. 696, 41 Am. St. Rep. 589), the long-time observation of Sunday as a day of rest, brought down through the ages, was alone involved, and the power so employed affords no support of week-day prohibition, not of hours of labor but solely of open business shop hours.

*Withey* v. *Bloem,* 163 Mich. 419, involved the hours of female workers in certain occupations and the statute there involved was within the power expressed in Const. 1908, art. 5, § 29, as follows:

''The legislature shall have power to enact laws relative to the hours and conditions under which men, women and children may be employed.''

Clearly, that case is no authority for imposing closed shop hours, but rather gives rise to the thought that power, not so granted, may not be exercised.

If the city, by ordinance, may fix closed hours for barber shops the ambit of the power will be far-reaching and might be extended to other trades and professions, without regard to hours of labor and would lead to arbitrary regulations.

By the great weight of authority the ordinance at bar, so far as it fixes open hours for barber shops,

is not within the police power and, in that particular, is void. See *People* v. *Gibbs,* 186 Mich. 127 (Ann. Cas. 1917 B, 830). Whether the other provisions, duplicating or complementing State license and regulations, are desirable, with excision of the provision relative to open hours, rests with the ordinance-making power.

The decree in the circuit court is modified to conform with this opinion and, so modified, is affirmed. A public question being involved, there will be no costs.

FEAD, C. J., and NORTH, BUTZEL, SHARPE, and CHANDLER, JJ., concurred with WIEST, J.

BUSHNELL, J. (*dissenting*). It must be conceded, as stated by Mr. Justice Geraghty in his dissenting opinion in *Patton* v. *City of Bellingham,* 179 Wash. 566 (38 Pac. [2d] 364, 98 A. L. R. 1076 [this case is discussed in the opinion of Mr. Justice WIEST]), "that, if the validity of the ordinance here challenged is to be tested by the weight of past judicial opinion, the conclusion must be against the ordinance." However, many of the cases involving similar statutes and ordinances, were determined by divided courts, the one just cited being a five to four decision.

Stripped of all pretext, the underlying purpose of the ordinance under consideration is to curb or regulate competition of a chain store character in the barber trade in the city of Detroit. By working their employees in two or three shifts, the larger downtown and chain barber shops can keep open for as many hours as they desire, and in one instance, as is shown by this record, for as many as 24 hours. In order that the owners and employees of the one, two or three-chair barber shops may exist, they must

meet this competition, thereby depriving themselves of needed rest, recreation and leisure.

As was said by Mr. Justice Blake, dissenting in the *Patton Case, supra:*

"The power of the government to enact legislation to alleviate such conditions is inherent. Such legislation is grounded in the government's 'right to protect all persons from the physical and moral debasement which comes from uninterrupted labor.' *Soon Hing* v. *Crowley,* (113 U. S. 703 [5 Sup. Ct. 730])."

To this quotation may be added the further observation of Mr. Justice Field in the *Soon Hing Case* (involving an ordinance limiting the hours of operation of laundries) that

"Such laws have always been deemed beneficent and merciful laws, especially to the poor and dependent, to the laborers in our factories and work shops, and in the heated rooms of our cities; and their validity has been sustained by the highest courts of the States."

See, also, annotations in 98 A. L. R. 1088.

The opinion proposed by Mr. Justice Wiest holds the ordinance in question good except as to that portion which fixes the hours during which barber shops may remain open; my brother says that provision is void because it is not within the police power. A similar conclusion was reached by the majority of the court in *Lochner* v. *New York,* 198 U. S. 45 (25 Sup. Ct. 539, 546, 3 Ann. Cas. 1133). The principal dissenting opinion in that case, involving a New York statute limiting hours of employment in bakeries to 60 hours a week and 10 hours a day, was written by Mr. Justice Harlan with whom Mr. Justice White and Mr. Justice Day concurred, Mr. Justice Holmes dissenting separately.

In considering Const. 1908, art. 5, § 29, before it was amended to include the hours of employment of men, as well as women and children, it was determined by this court that an act regulating hours of labor of females employed in factories, mills, stores, shops and warehouses (Act No. 285, § 9, Pub. Acts 1909, now stated in 2 Comp. Laws 1929, § 8324) was a valid exercise of the police power, and that it did not violate the Fourteenth Amendment to the Constitution of the United States and was not class legislation. These views of the court are expressed in *Withey* v. *Bloem,* 163 Mich. 419 (35 L. R. A. [N. S.] 628), the opinion being replete with citations to authorities on the subject, and includes a consideration of *Lochner* v. *New York, supra.*

I refer to and adopt without repeating the language in *Withey* v. *Bloem, supra,* quoted on page 430, which is from Cooley on Constitutional Limitations (7th Ed.), p. 554.

In addition, I believe the following statements from the text of the foregoing authority are also applicable:

"In creating a legislative department and conferring upon it the legislative power, the people must be understood to have conferred the full and complete power as it rests in, and may be exercised by, the sovereign power of any country, subject only to such restrictions as they may have seen fit to impose, and to the limitations which are contained in the Constitution of the United States. The legislative department is not made a special agency for the exercise of specifically defined legislative powers, but is intrusted with the general authority to make laws at discretion." Cooley on Constitutional Limitations (7th Ed.), p. 126.

The same authority says, at page 232:

"Nor can a court declare a statute unconstitutional and void, solely on the ground of unjust and

oppressive provisions, or because it is supposed to violate the natural, social, or political rights of the citizen, unless it can be shown that such injustice is prohibited or such rights guaranteed or protected by the Constitution."

And at page 236:

"The rule of law upon this subject appears to be, that, except where the Constitution has imposed limits upon the legislative power, it must be considered as practically absolute, whether it operate according to natural justice or not in any particular case. The courts are not the guardians of the rights of the people of the State except as those rights are secured by some constitutional provision which comes within the judicial cognizance. The protection against unwise or oppressive legislation, within constitutional bounds, is by an appeal to the justice and patriotism of the representatives of the people. If this fail, the people in their sovereign capacity can correct the evil; but courts cannot assume their rights. The judiciary can only arrest the execution of a statute when it conflicts with the Constitution. It cannot run a race of opinions upon points of rights, reason, and expediency with the law-making power. Any legislative act which does not encroach upon the powers apportioned to the other departments of the government being *prima facie* valid, must be enforced, unless restrictions upon the legislative authority can be pointed out in the Constitution, and the case shown to come within them."

The foregoing statement of law was adopted by this court in *Cummings* v. *Garner,* 213 Mich. 408, at page 424.

I am unable to distinguish *People* v. *Gibbs,* 186 Mich. 127 (Ann. Cas. 1917B, 830); note 31 A. L. R. 299, declaring an ordinance of the city of Detroit invalid which prevented public auctions except between the hours of 8 a. m. and 6 p. m. Whether or not the

*Gibbs Case* is overruled by implication in *Saigh* v. *Common Council of City of Petoskey,* 251 Mich. 77, where we approved an ordinance prohibiting certain types of auction, is unnecessary for determination at this time. It is sufficient to say that the instant opinion directly overrules *People* v. *Gibbs, supra.* See, also, *City of Roanoke* v. *Fisher,* 137 Va. 75 (119 S. E. 259); *Holsman* v. *Thomas,* 112 Ohio St. 397 (147 N. E. 750, 39 A. L. R. 760) and *Barbier* v. *Connolly,* 113 U. S. 27 (5 Sup. Ct. 357).

The proposed opinion of my brother does not question the power of the city council to enact an ordinance regulating certain practices in the barber trade. In this I concur, but in addition thereto, I cannot find any prohibition in either Constitution or charter against that portion of the ordinance to which my brother objects. For the reasons hereinbefore given, I believe the regulation of the hours of operation of barber shops is within the police power.

The decree should be vacated and one entered here sustaining the ordinance, but without costs. It is so ordered.

POTTER, J. (*dissenting*). Plaintiffs filed a bill of complaint attacking the validity of an ordinance passed by the city of Detroit to provide for the inspection, regulation and licensing of barber shops. This ordinance is claimed to be invalid and not a lawful exercise of the police power in that (a) the provisions thereof as to licensing, powers of inspection and closing hours are unfair and unreasonable; (b) the closing hours provision is unlawful in that it deprives plaintiffs of a valuable vested property right and deprives plaintiffs of their private property without due process of law, and is an unlawful and unwarranted invasion of the right of each of the plaintiffs to work at his trade and to employ others

to work for him; (c) said ordinance is unlawful special legislation; (d) by section 2, subsection (f), an unlawful delegation of arbitrary power to the board of health of said defendant municipal corporation is made. It is claimed for the reasons above set forth the ordinance is in violation of plaintiffs' constitutional rights, viz.: (a) in violation of the U. S. Const., 14th Am., and (b) in violation of Mich. Const. 1908, art. 2, §§ 1, 16.

The Constitution of Michigan (1908), art. 2, § 1, provides:

"All political power is inherent in the people. Government is instituted for their equal benefit, security and protection."

And art. 2, § 16, provides:

"No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law."

I assume it is claimed the ordinance deprives the plaintiffs of the equal benefit, security and protection of the government and that the ordinance in question deprives them of life, liberty or property, without due process of law.

The trial court held the ordinance was invalid, void and unconstitutional and declared the same to be inoperative. From this decree, defendants appeal.

The city of Detroit is incorporated under the home rule act, and under the home rule act has the power and authority to pass ordinances for the public peace and health and for the safety of persons and property, 1 Comp. Laws 1929, § 2230; for the regulation of trades, occupations and amusements within its boundaries, and for the prohibition of such trades, occupations and amusements as are detri-

mental to the health, morals or welfare of its inhabitants, 1 Comp. Laws 1929, § 2239; to pass ordinances for the enforcement of all such local, police, sanitary and other regulations as are not in conflict with the general laws, 1 Comp. Laws 1929, § 2239; for the exercise of all municipal powers in the management and control of municipal property and in the administration of the municipal government, whether such powers be expressly enumerated or not; and to pass all other laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of the State, 1 Comp. Laws 1929, § 2240.

In compliance with the home rule act governing formation of its charter, the city charter of Detroit vests the legislative power in the council to enact ordinances to carry into effect the powers conferred and the duties imposed upon the city by the Constitution and laws of the State, and to promote the general peace, health, safety, welfare and good government of the city. It authorizes the council to pass ordinances to provide for the regulation of trades, occupations and amusements, and by ordinance to exercise all legislative powers vested therein, subject to the Constitution and laws of the State. And it was in pursuance of the powers vested in the council by the charter and governing statute that the ordinance in question, a copy of which is contained in the margin,* was enacted.

---

\* An ordinance to provide for the inspection, regulation and licensing of barber shops.

---

It is hereby ordained by the people of the city of Detroit:

SECTION 1. No person, firm, copartnership or corporation shall cause to be opened, or conduct, maintain or operate a barber shop in the city of Detroit without having first obtained a license therefor from the mayor.

Such license shall be renewed annually, being dated December 1st of each year, and shall be issued in the name of the proprietor who

It is probably well established that we may not inquire into the knowledge, negligence, motives or methods of the legislative body of the city if the ordinance was regularly enacted in pursuance of power conferred upon the council by the charter and constitutional laws of the State. *C. F. Smith Co.* v. *Fitzgerald*, 270 Mich. 659.

This court ought not to declare a statute unconstitutional because it may not agree with the purpose of the legislation under consideration. The right of this court to pass upon the constitutionality of statutes or ordinances is based upon its right, in-

operates the shop. A separate license shall be required for each barber shop and will not be transferable from one location to another.

SEC. 2. Application for a barber shop license shall be made to the Detroit department of health on a blank to be furnished by said department. Said application shall contain the following:

(a) The name and residence of the applicant.

(b) The location where he proposes to conduct his barber shop.

(c) The date of his registration with the State board of examiners of barbers.

(d) An agreement to conform to the rules of the department of health and of the State board of examiners of barbers.

(e) An agreement with the department of health that the inspectors from that department shall have the right to make inspection of the barber shop at all reasonable times.

(f) Such other information as the department of health may require.

SEC. 3. No license shall be granted to an applicant until an inspector of the department of health shall have made an investigation of the barber shop and shall certify to the mayor that the same complies with the requirements of the department of health governing barber shops and with the rules and regulations of the State board of examiners of barbers.

SEC. 4. The license fee shall be three dollars for each barber shop which fee shall be paid before a license is granted, such fees shall be deposited with the city treasurer. It shall be the duty of the city treasurer to turn into the public health fund of said city all moneys so received for the licensing of barber shops, such money is to be used by said department in the enforcement and carrying out of the purpose of this ordinance.

SEC. 5. The license of any barber shop proprietor may be revoked or suspended by the mayor of the city of Detroit after due hearing before said mayor, upon notice of said hearing issued to the holder of said license, if he is found to be an habitual drunkard, if he is suffering with a communicable disease, if he does his work in an insanitary or a filthy manner, or if he fails to comply with the rules and regulations of the department of health governing barber shops.

herent in the court, to determine and declare the law. And unless the ordinance is plainly inconsistent with the Constitution and laws of the State or violative of the terms and provisions of the city charter of the city of Detroit it ought not to be declared unconstitutional.

"All presumptions are that this law was regularly enacted in full compliance with all provisions for its adoption and is in conformity with all constitutional requirements. To hold it void the repugnancy must clearly appear. In case of doubt courts will not interfere to declare a regularly enacted statute

SEC. 6. The department of health is hereby empowered to make all reasonable rules and regulations for the purpose of carrying out the purpose of this ordinance.

SEC. 7. The requirements for all barber shops in the city of Detroit shall be as follows:

Regulation 1. The room to be used as a barber shop must be clean, well lighted and ventilated.

Regulation 2. All barber shops shall have running hot and cold water and sewage connections therefrom. They shall have ample toilet accommodation.

Regulation 3. The barber shop, its plumbing fixtures, and equipment must be maintained in a sanitary condition and in good repair.

Regulation 4. The department of health inspector shall have power to enter and make reasonable examination of any barber shop in the city of Detroit during business hours. He shall not be interfered with by any person or persons while in the performance of his duties as inspector.

Regulation 5. The license granted by the mayor shall be conspicuously displayed in the shop.

Regulation 6. All barber shops operating in the city of Detroit shall be open only between eight o'clock in the morning and seven o'clock in the evening; except that on Saturdays and the day preceding any legal holiday, barber shops may remain open until nine o'clock in the evening.

SEC. 8. Any person, firm, copartnership or corporation violating any of the provisions of this ordinance shall be punished by a fine not to exceed $100 or imprisonment in the house of correction for not more than 90 days or both such fine and imprisonment in the discretion of the court.

SEC. 9. Should any provision or section of this ordinance be held invalid for any reason, such holding shall not be construed as affecting the validity of any of the remaining portions of such section of this ordinance; it being the intent that this ordinance shall stand notwithstanding the invalidity of such provision or section.

SEC. 10. This ordinance is hereby declared to be immediately necessary for the preservation of the public peace, health and safety and is hereby given immediate effect.

unconstitutional." *Kelley* v. *Judge of Recorder's Court of Detroit,* 239 Mich. 204, 214 (53 A. L. R. 273).

It is contended upon the one hand that the ordinance in question is warranted by the police power and, on the other hand, that it goes beyond the authorized exercise of the police power of the city. In *People* v. *Brazee,* 183 Mich. 259, 262 (L. R. A. 1916E, 1146), where the court had under consideration the regulation of an employment agency, this court said:

"The 'police power' is said to be a power or organization of a system of regulations tending to the health, order, convenience, and comfort of the people and to the prevention and punishment of injuries and offenses to the public. It is the expression of an instinct of self-preservation and characteristic of every living creature, an inherent faculty and function of life, attributed to all self-governing bodies as indispensable to their healthy existence and to the public welfare. It embraces all rules and regulations for the protection of life and the security of property. 28 Cyc. p. 692; 31 Cyc. p. 902. It has for its object the improvement of social and economic conditions affecting the community at large and collectively with a view to bring about 'the greatest good of the greatest number.' Courts have consistently and wisely declined to set any fixed limitations upon subjects calling for the exercise of this power. It is elastic and is exercised from time to time as varying social conditions demand correction."

And in *Clements* v. *McCabe,* 210 Mich. 207, 215, the court said:

"The governmental authority known as 'police power' is concededly an inherent attribute of State sovereignty. It only belongs to subordinate governmental divisions when and as conferred by the State either through its Constitution or constitutionally

authorized legislation.  As generally understood it operates in a conceded sphere relating to public safety, order and morals for the protection of health, person and property, which is never questioned; but with changing conditions and requirements of our modern civilization, increasing regulatory and restrictive legislation has expanded its application to new subjects and demands presenting a debatable sphere where compulsory control borders the line of claimed constitutional rights and private freedom of action.''

The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community.  *Williams* v. *State of Arkansas,* 217 U. S. 79 (30 Sup. Ct. 493, 18 Ann. Cas. 865); *Crowley* v. *Christensen,* 137 U. S. 86 (11 Sup. Ct. 13); *Kelley* v. *Judge of Recorder's Court of Detroit, supra.*

The State may regulate the use of private property when the health, morals or public welfare demand it.  Such laws have their origin in necessity.  *People* v. *Smith,* 108 Mich. 527 (32 L. R. A. 853, 62 Am. St. Rep. 715).

It is a settled principle growing out of the nature of well-ordered civil society that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated that it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community.

It is elementary that all property is held subject to the general police power to regulate and control its use so as to secure the general safety.  *Peninsular Stove Co.* v. *Burton,* 220 Mich. 284.

There are two very important essentials to reasonable and proper exercise of the police power. They are,—(1) that it must be for the public welfare; and (2) that the measures adopted must have relation to the purpose sought to be accomplished. That the legislation under consideration was intended for the public good cannot be questioned. The only question that requires discussion is whether the measures the legislature adopted to accomplish the purpose of the act are arbitrary and oppressive, or whether they are appropriately related to the purpose and have a tendency to accomplish it. *Parkes* v. *Judge of Recorder's Court,* 236 Mich. 460 (47 A. L. R. 1128).

Where the regulation is within the scope of the authority legally delegated, the presumption of the existence of the facts justifying its specific exercise attaches alike to statutes, to municipal ordinances and to orders of administrative bodies. *Pacific States Box & Basket Co.* v. *White,* 296 U. S. 176 (56 Sup. Ct. 159, 101 A. L. R. 853).

The police power "must be exercised for an end which is in fact public and the means adopted must be reasonably adapted to the accomplishment of that end and must not be arbitrary or oppressive." *Treigle* v. *Acme Homestead Ass'n,* 297 U. S. 189, 728 (56 Sup. Ct. 408, 587, 101 A. L. R. 1284).

Are the provisions of the ordinance as to licensing, powers of inspection and closing hours unfair and unreasonable? This question was long ago answered by the supreme court of the United States in *Barbier* v. *Connolly,* 113 U. S. 27 (5 Sup. Ct. 357). The board of supervisors of the city and county of San Francisco, the legislative authority of that municipality, passed an ordinance regulating laundries in San Francisco and prescribing the hours during

which they could be operated. The fourth section of this ordinance declared that no person owning or employed in a public laundry or in a public wash-house within the prescribed limits should wash or iron clothes between the hours of ten in the evening and six in the morning or upon any portion of Sunday. The prohibition against labor on Sunday was not involved in the litigation. The court said:

"The provision is purely a police regulation within the competency of any municipality possessed of the ordinary powers belonging to such bodies. And it would be an extraordinary usurpation of the authority of a municipality, if a Federal tribunal should undertake to supervise such regulations. It may be a necessary measure of precaution in a city composed largely of wooden buildings like San Francisco, that occupations, in which fires are constantly required, should cease after certain hours at night until the following morning; and of the necessity of such regulations the municipal bodies are the exclusive judges; at least any correction of their action in such matters can come only from State legislation or State tribunals. The same municipal authority which directs the cessation of labor must necessarily prescribe the limits within which it shall be enforced, as it does the limits in a city within which wooden buildings cannot be constructed. There is no invidious discrimination against any one within the prescribed limits by such regulations. There is none in the regulation under consideration. The specification of the limits within which the business cannot be carried on without the certificates of the health officer and board of fire wardens is merely a designation of the portion of the city in which the precautionary measures against fire and to secure proper drainage must be taken for the public health and safety. It is not legislation discriminating against any one. All persons engaged

in the same business within it are treated alike; are subject to the same restrictions and are entitled to the same privileges under similar conditions.''

And in answer to the claim that the ordinance in question was in violation of the fourteenth amendment to the Constitution of the United States, the court said:

"Neither the amendment—broad and comprehensive as it is—nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the State, develop its resources, and add to its wealth and prosperity. From the very necessities of society, legislation of a special character, having these objects in view, must often be had in certain districts. * * * Class legislation, discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment.''

In *Camfield* v. *United States,* 167 U. S. 518 (17 Sup. Ct. 864), the court, in commenting upon the case of *Rideout* v. *Knox,* 148 Mass. 368 (19 N. E. 390, 2 L. R. A. 81, 12 Am. St. Rep. 560), said:

"The case is authority for the proposition that the police power is not subject to any definite limitations, but is coextensive with the necessities of the case and the safeguard of the public interests.''

The provisions of the ordinance in question as to licensing, powers of inspection and closing hours are valid, and the ordinance in question operates upon all persons of a particular class alike and is not

unlawful special legislation, nor does it violate either the U. S. Const. 14th Am., or Mich. Const. 1908, art. 2, §§ 1, 16.

This court has nothing to do with the wisdom or unwisdom of the ordinance in question. We are not to declare it unconstitutional unless it is plainly so. Both the governing statute authorizing the creation of home rule charters and the charter itself provide for the enactment of an ordinance of this kind. The regulations in questions are in addition to those fixed by the general law of the State. But this does not render them invalid. *National Amusement Co.* v. *Johnson,* 270 Mich. 613; *People* v. *Hanrahan,* 75 Mich. 611 (4 L. R. A. 751).

Reliance is placed upon *Lochner* v. *New York,* 198 U. S. 45 (25 Sup. Ct. 539, 546, 3 Ann. Cas. 1133), but this case was modified in this State by *Withey* v. *Bloem,* 163 Mich. 419 (35 L. R. A. [N. S.] 628, and by the supreme court of the United States in *Muller* v. *Oregon,* 208 U. S. 412 (28 Sup. Ct. 324, 13 Ann. Cas. 957), and its inapplicability was demonstrated in the dissenting opinions of Justices Taft, Sanford and Holmes in *Adkins* v. *Children's Hospital,* 261 U. S. 525 (43 Sup. Ct. 394, 24 A. L. R. 1238).

There is nothing in the ordinance which unlawfully deprives those engaged in operating barber shops of their property or personal rights or unreasonably interferes with their vested interests.

It is now too late to claim the regulation of barber shops is not within the legitimate exercise of the police power. Act No. 148, Pub. Acts 1893 (2 Comp. Laws 1929, § 8712 *et seq.*), provided for Sunday closing of barber shops. Act No. 212, Pub. Acts 1899, first provided for the licensing of barbers and the regulation of barber shops, and this has been followed by Act No. 235, Pub. Acts 1901, Act No. 387,

Pub. Acts 1913, and Act No. 382, Pub. Acts 1927, now constituting 2 Comp. Laws 1929, § 8691 *et seq.*

There are many cases from other jurisdictions bearing upon the regulation of barber shops. Among others,— *People* v. *Logan,* 284 Ill. 83 (119 N. E. 913); *Commonwealth* v. *Ward,* 136 Ky. 146 (123 S. W. 673); *State* v. *Zeno,* 79 Minn. 80 (81 N. W. 748, 48 L. R. A. 88, 79 Am. St. Rep. 422); *Moler* v. *Whisman,* 243 Mo. 571 (147 S. W. 985, 40 L. R. A. [N. S.] 629, Ann. Cas. 1913D, 392); *La Porta* v. *Hoboken Board of Health,* 71 N. J. Law 88 (58 Atl. 115); *State* v. *Armeno,* 29 R. I. 431 (72 Atl. 216); *Hanzal* v. *City of San Antonio* (Tex. Civ. App.), 221 S. W. 237; *State* v. *Walker,* 48 Wash. 8 (92 Pac. 775, 15 Ann. Cas. 257); *State* v. *Sharpless,* 31 Wash. 191 (71 Pac. 737, 96 Am. St. Rep. 893).

When the Sunday closing law of 1893 was before this court in *People* v. *Bellet,* 99 Mich. 151 (22 L. R. A. 696, 41 Am. St. Rep. 589), it said:

"The better reason for maintaining the police power to prohibit citizens from engaging in secular pursuits on Sunday is the necessity of such regulation as a sanitary measure. As to those employments which are noiseless, and harmless in themselves, and conducted in a manner not calculated to offend those who, from religious scruples, observe Sunday as the Lord's day, this necessity appears to be the only valid source of legislative power; and this is based upon the fact that experience has demonstrated that one day's rest is requisite for the health of most individuals, and not all individuals possess the power to observe a day of rest of their own volition. As is well said by Mr. Tiedeman:

" 'If the law did not interfere, the feverish, intense desire to acquire wealth, so thoroughly a characteristic of the American nation, inciting a relentless rivalry and competition, would ultimately prevent, not only the wage-earners, but likewise the capitalists and em-

ployers themselves, from yielding to the warnings of nature, and obeying the instinct of self-preservation, by resting periodically from labor, even if the mad pursuit of wealth should not warp their judgment and destroy this instinct. Remove the prohibition of law, and this wholesome sanitary regulation would cease to be observed.' Tiedeman, Limitations of Police Power, 181.

"In Cooley's Constitutional Limitations (* p. 477; 6th Ed., p. 584), it is said:

" 'It appears to us that, if the benefit to the individual is alone to be considered, the argument against the law which he may make who has already observed the seventh day of the week is unanswerable.'

"The obligation to cease from secular pursuits on one day of the week does not discriminate either in his favor or against him.

"We think the statute under consideration is within the police power of the State, and not in conflict with any express provision of the Constitution, and that it does not conflict with the fourteenth amendment of the Constitution of the United States."

The ordinance in question is not attacked except it is claimed regulation No. 6 is unconstitutional. That provides:

"All barber shops operating in the City of Detroit shall be open only between eight o'clock in the morning and seven o'clock in the evening; except that on Saturdays and the day preceding any legal holiday, barber shops may remain open until nine o'clock in the evening."

In *People* v. *Bellet, supra,* it was held the Sunday closing law was clearly a sanitary measure enacted in the interest of the public health because individuals required one day of rest in seven.

The ordinance in question is clearly a sanitary measure. It purports to be enacted in the interest of the public health. Barber shops are placed under the supervision of the health department of the city of Detroit.

It is just as true now as it was when the Sunday closing law was enacted that individuals engaged in the barber trade require rest,— that rest is a requisite of health,— that not all individuals may have the required rest of their own volition,— that they are driven on relentlessly by the feverish desire to hold their jobs, support their families and maintain their standing in the community, as well as by their endeavor to satisfy exacting customers. Larger barber shops in a metropolitan area like Detroit may remain open continuously. They may protect the health of their men by giving them an opportunity of rest by working them in relays. But this inevitably tends to drive out the smaller shops which cannot, in locations where they are subject to the competition of chain store shops, meet such competition, particularly where there is continuous operation.

This court held the Sunday closing law was warranted and was a proper exercise of the police power upon the theory that it tended to preserve the public health. Certainly if the closing of barber shops on Sunday was a proper exercise of the police power in the interest of the public health, the closing of shops in the nighttime as provided for in the ordinance in question is warranted. And by such ordinance being made operative against large and small shops alike, instead of being unjust and discriminatory in character, it tends to remove discrimination and places the large and the small shops upon an equality.

The reasoning in *People* v. *Bellet, supra,* effectually disposes of the contentions of invalidity made in this case and establishes that the ordinance in question is a legitimate exercise of the police power in the interest of the public health, and does not

offend against either the State or the Federal Con-
stitution.

In *People* v. *DeRose,* 230 Mich. 180, the validity of
an ordinance which provided grocery stores and
meat markets should be closed on Sunday was be-
fore the court, and such ordinance of the city of Lan-
sing was upheld under the police power of the State
and reliance was had upon *People* v. *Bellet, supra.*
It was attacked on all the grounds upon which the
ordinance here involved is assailed.  The court said:

"This ordinance is authorized both by the State
and by the charter, and that it is not in conflict with
the general laws of the State.  It is therefore not
invalid for want of authority to pass it."

In *Falco* v. *City of Atlantic City,* 99 N. J. Law, 19
(122 Atl. 610), an ordinance requiring the closing
of barber shops during the nighttime was before the
court.  The ordinance was challenged as unconsti-
tutional.  It was said:

"As to constitutionality, the statute is well with-
in the limits of the general police power.  The fruit-
fulness of many barber shops as spreaders of cer-
tain forms of contagious disease is a matter of com-
mon knowledge, and the power of the State and its
subordinate agents to provide for licensing, regula-
tion and inspection of such places in the interest of
the public health cannot be doubted.  From the
health standpoint, 'stringent regulations are law-
ful.'  *La Porta* v. *Hoboken Board of Health,* 71 N. J.
Law, 88 (58 Atl. 115).

"So far as relates to the provision in the act of
1917 permitting regulation of the opening and clos-
ing hours, this is also within the police power.  In
*Barbier* v. *Connolly,* 113 U. S. 27 (5 Sup. Ct. 357),
and *Soon Hing* v. *Crowley,* 113 U. S. 703 (5 Sup. Ct.
730), regulations of the hours of closing public laun-

dries were considered by the Supreme Court of the United States and held not in violation of the fourteenth amendment. We fail to see any merit in the constitutional point.

"Nor can it be said judicially that the ordinance fixing 9 p. m. on Saturdays and 8 p. m. on other week days as the closing hour is unreasonable. If it be reasonable to set a closing hour, and we think it plainly is, that hour must be left to the fair discretion of the municipal authority. Where such authority is empowered to use its discretion in passing ordinances, the implication is that they shall be reasonable; but every intendment is in favor of their reasonable character, and unless plainly unreasonable the court will not interfere. *McGonnell* v. *City of Orange,* 98 N. J. Law, 642, 647 (121 Atl. 135), and cases cited. So considered the regulation in question is not unreasonable. It seems probable that one reason for the legislation upon which it rests was to enable municipal authorities to fix a definite time within which their inspectors might readily and adequately perform their duties with respect to such places. Barber shops are public places, frequented by all classes. Sanitary supervision thereof is very generally regarded as necessary and powers conferred to that end should receive liberal construction so that they may be rendered effective. *La Porta* v. *Hoboken Board of Health, supra.* To allow barber shops to remain open to the public at all hours of the night might well be regarded as rendering ready and adequate inspection inconvenient or difficult or even impossible, and consequently detrimental to public health. Such considerations are for the fair determination of the municipal authorities, and we cannot say that the regulation in the instant case is unreasonable.

"As to the objection that the ordinance is in restraint of trade and therefore unlawful, we see no merit in it. All persons engaged in the same business are thereby treated alike; are subject to the

same restrictions, and are entitled to the same privileges under similar conditions.''

In *Wilson* v. *City of Zanesville,* 130 Ohio St. 286 (199 N. E. 187), a municipal ordinance of the city of Zanesville providing for the closing of barber shops during the nighttime was before the court. It was attacked upon all the grounds upon which the present ordinance is attacked. The court there approved the case of *Falco* v. *City of Atlantic City, supra,* and said:

"There is another consideration which appeals to the legislator as well as to the jurist. Barber shops, which are usually respectable, and operated by law-abiding citizens, may become lounging places for the idle and dissipated, and so a menace to minors, and often in our cities the barber shop in front may be a blind for a den of thieves, professional gamblers, and racketeers behind. This situation is well known, and is even a matter of common knowledge among policemen in our large cities. At the time a certain policy racket man and former bootlegging beer baron, was recently killed in New York City two of his henchmen were shot down in a midnight barber shop of a subway entrance. In the language of the street a 'midnight barber shop' is one that keeps open all night. If barber shops may run at all times of the night the number of vicious places of this character will inevitably be augmented. If similar evils may be thwarted by legislation fixing hours that billiard and pool rooms may remain open, why should not the remedy of municipal legislation be applied in the case of barber shops? Such an ordinance therefore has a relation to public morals and safety.

"In our judgment this court should not confine the police power within such limits that the public cannot be protected in any case when there seems to be a reasonable basis for exercising the legisla-

tive purpose to protect the public health, morals and safety. It has been pointed out that the law-making power is primarily the branch of government that should determine the need of such provisions. We quote again from the case of *Nebbia* v. *New York,* 291 U. S. 502 (54 Sup. Ct. 505, 89 A. L. R. 1469), at page 537: 'So far as the requirement of due process is concerned, and in the absence of other constitutional restriction, a State is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose. The courts are without authority either to declare such policy, or, when it is declared by the legislature, to override it. If the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied, and judicial determination to that effect renders a court *functus officio.* * * * With the wisdom of the policy adopted, with the adequacy or practicability of the law enacted to forward it, the courts are both incompetent and unauthorized to deal. The course of decision in this court exhibits a firm adherence to these principles. Times without number we have said that the legislature is primarily the judge of the necessity of such an enactment, that every possible presumption is in favor of its validity, and that though the court may hold views inconsistent with the wisdom of the law, it may not be annulled unless palpably in excess of legislative power.'

"We are of the opinion that the provisions of the ordinance under inquiry are neither unreasonable, discriminatory, arbitrary nor capricious, and that they bear a 'real and substantial relation' to the object sought to be attained, namely, public health, morals and safety."

In this case two of the justices dissented.

Regulations in the interest of the public health are not to be strictly construed, *Hurst* v. *Warner,* 102

Mich. 238 (26 L. R. A. 484, 47 Am. St. Rep. 525); *People* v. *Smith,* 108 Mich. 527 (32 L. R. A. 853, 62 Am. St. Rep. 715); *People* v. *Cramer,* 247 Mich. 127; *Rock* v. *Carney,* 216 Mich. 280 (22 A. L. R. 1178); and it must be presumed the city council of the city of Detroit acted in good faith in the line of its duty in enacting the ordinance in question. Such council has large discretionary powers and its acts should not be interfered with except when they are clearly invalid. *Upjohn* v. *Board of Health of the Township of Richland,* 46 Mich. 542 (41 Am. Rep. 178).

"Powers conferred upon boards of health to enable them effectually to perform their important functions in safeguarding the public health should receive a liberal construction." 29 C. J. p. 248, citing, among other cases, *Allison* v. *Cash,* 143 Ky. 679 (137 S. W. 245); *Lake Erie & Western R. Co.* v. *James,* 10 Ind. App. 550 (35 N. E. 395; 38 N. E. 192); *La Porta* v. *Hoboken Board of Health, supra; Gregory* v. *New York,* 40 N. Y. 273; *State, ex rel. McBride,* v. *Superior Court of King County,* 103 Wash. 409 (174 Pac. 973); *Magoon* v. *Lord-Young Engineering Co., Ltd.,* 22 Hawaii, 327.

"Measures to prevent the spread of dangerous communicable diseases * * * are practically as old as history." *Rock* v. *Carney, supra,* p. 296.

"The health of the people is of supreme importance to the State, and measures reasonably calculated to promote the public health have with uniformity been sustained." *Rock* v. *Carney, supra,* p. 290.

In *People* v. *Logan,* 284 Ill. 83 (119 N. E. 913), it is said:

"The exercise of the police power for the regulation of any trade, occupation or calling can be justified only on the ground of necessity for the health, safety, welfare or comfort of society. (*Bessette* v.

*People,* 193 Ill. 334 [62 N. E. 215, 56 L. R. A. 558].)
The trade of a barber brings him in direct contact
with the persons of his patrons, and careless and
unsanitary practices in his trade may induce dis-
eases of the skin.   Sycosis (popularly known as
barber's itch) is a common form of disease of the
face and scalp propagated by the use of infected
razors and brushes.   Other and more serious dis-
eases may also be similarly spread.   It cannot be
said that the reasonable regulation of the trade of a
barber has no relation to the health and safety of
the public.   Such regulation is therefore within the
scope of the police power which the State inherently
possesses to restrain and control the exercise of pri-
vate rights in such manner as may be necessary and
appropriate to promote the public health, safety and
welfare.''

In *Ganley* v. *Claeys,* 2 Cal. (2d) 266 (40 Pac. [2d]
817), five out of seven justices held the ordinance of
the city of Martinez regulating the times for the
carrying on and the conducting of the business of
barbering in the city of Martinez invalid.   But the
reasoning in support of the conclusion arrived at in
that case is specious and unsound.

In *Knight* v. *Johns,* 161 Miss. 519 (137 South. 509),
it is said:

''To compel the closing of barber shops between
certain hours, because it will be inconvenient for the
city to then inspect them, when they are open at
other hours amply sufficient for such inspection,
would unnecessarily and unreasonably interfere
with the operation thereof.''

This is the basis of the conclusion arrived at by
the Mississippi court,—and such reasoning is dia-
metrically opposed to that approved by the supreme
court of the United States in *Barbier* v. *Connolly,*
*supra,* and *Soon Hing* v. *Crowley, supra,* and of this

court in *People* v. *Bellet, supra,* and *People* v. *DeRose, supra.*

In *State, ex rel. Newman,* v. *City of Laramie,* 40 Wyo. 74 (275 Pac. 106), a similar ordinance was declared invalid, the court following that line of decisions which hold that the closing of stores at certain times could not be compelled by legislation, upon the ground it constituted a violent interference with the rights of persons to engage in a legitimate business.

But, in this State, it has already been settled that barber shops may be compelled by statute to close on Sunday and that grocery stores and meat markets may be compelled by city ordinance to be closed on Sunday, and the supreme court of the United States has declared that cities may prevent the operation of laundries in the nighttime.

None of these cases was decided upon the theory it was necessary to close the business in order to aid inspection, but all of them were disposed of upon the broader ground that such legislation, enacted in the interest of the public health and safety, ought to be enforced.

In *State, ex rel. Pavlik,* v. *Johannes,* 194 Minn. 10 (259 N. W. 537), an ordinance similar to that in question was before the court. A majority of the court held the ordinance invalid, against the dissent of Chief Justice Devaney who said:

"In my opinion the ordinance here in question is one which is designed solely to regulate hours of labor. As such, I believe its enactment constitutes a valid exercise of the police power. Ordinances prescribing hours of opening and closing second-hand shops, *Hyman* v. *Boldrick,* 153 Ky. 77 (154 S. W. 369, 44 L. R. A. [N. S.] 1039) ; pawnshops, *City of Butte* v. *Paltrovich,* 30 Mont. 18 (75 Pac. 521, 104 Am. St. Rep. 698) ; and pool halls, billiard halls, and

soft drink parlors, *Churchill* v. *City of Albany,* 65 Ore. 442 (133 Pac. 632, Ann. Cas. 1915A, 1094), have been held constitutional. Such enactments, though not sustained as a means of regulating hours of labor, have been upheld as a valid exercise of the police power. In *Barbier* v. *Connolly,* 113 U. S. 27 (5 Sup. Ct. 357), and *Soon Hing* v. *Crowley,* 113 U. S. 703 (5 Sup. Ct. 730), the United States supreme court upheld ordinances prohibiting washing and ironing in public laundries from 10 p. m. until 6 a. m. within certain territorial limits. This was held valid as a means of fire prevention. In the *Soon Hing Case* it was said (113 U. S. 710):

   " 'So, too, with the hours of labor. On few subjects has there been more regulation. How many hours shall constitute a day's work in the absence of contract, at what time shops in our cities shall close at night, are constant subjects of legislation.'

   "Through all these decisions runs the notion that it is largely in the discretion of the body which enacts the law (in this case the Minneapolis city council) whether a particular subject is a proper one for regulation and that such determination by that body should not be lightly interfered with.

   "Sunday closing laws have been almost universally upheld. In the *Soon Hing Case,* Mr. Justice Field said (113 U. S. 710):

   " 'Laws setting aside Sunday as a day of rest are upheld, not from any right of the government to legislate for the promotion of religious observances, but from its right to protect all persons from the physical and moral debasement which comes from uninterrupted labor. Such laws have always been deemed beneficent and merciful laws, especially to the poor and dependent, to the laborers in our factories and workshops and in the heated rooms of our cities; and their validity has been sustained by the highest courts of the States.'

   "See, also, *State* v. *Petit,* 74 Minn. 376, 379 (77 N. W. 225).

   "I am persuaded by the language of Mr. Justice Blake in the dissenting opinion of *Patton* v. *City of Bellingham,* 179 Wash. 566, 582 (38 Pac. [2d] 364, 370, 98 A. L. R. 1076.) "

In *Patton* v. *City of Bellingham,* 179 Wash. 566 (38 Pac. [2d] 364, 98 A. L. R. 1076), a similar ordinance was declared invalid. Justice Steinert prepared the opinion and this was concurred in by Chief Justice Beals and Justices Main, Mitchell and Tolman. In this case Justices Blake, Holcomb, Millard and Geraghty dissented. Justice Blake, after reviewing the authorities, said:

"So here, looking through the pretext and at the reality, the purpose of this ordinance is to curb competition of the chain store character in the barber trade. And it is every whit as justifiable as the laundry ordinance. The chain shops, by working two or three shifts, can keep open twelve, sixteen or twenty-four hours. In order to live, the one or two chair shops must keep open for a like period. Thus, through economic necessity, men in the latter shops are forced to work for a length of hours that deprives them of the leisure that makes life worth living. The power of the government to enact legislation to alleviate such conditions is inherent. Such legislation is grounded in the government's 'right to protect all persons from the physical and moral debasement of uninterrupted labor.' *Soon Hing* v. *Crowley,* 113 U. S. 703 (5 Sup. Ct. 730).

"And when the government speaks on such a question through its legislative authority, the courts have no right or power to interfere, except in case the legislative action is arbitrary or capricious."

Justice Geraghty in dissenting said:

" 'Government is a contrivance of human wisdom to provide for human wants. Men have a right that these wants should be provided for by this wisdom.'

"Laws forbidding labor on Sunday have been sustained by the courts, not upon religious considerations, but as being socially and economically necessary and conducive to the common welfare. We have

in this State at present an admittedly valid law forbidding the opening of barber shops on Sunday, and a legislative declaration that barbering is not one of the works of necessity permitted on that day. Now, if it is competent for the State, solely upon considerations of common welfare, to forbid the opening of barber shops on Sunday, can it be said that it may not limit them to nine hours on week days, when in the judgment of the legislature public welfare requires it? While the ordinance here involved is in terms one for early closing, its essential purpose is manifestly a shortening of the hours of labor for persons engaged in that trade.

"It will not do for courts, by too strict an adherence to precedents having relation to other social and economic conditions, to negative all efforts of the people to improve, through governmental intervention, their social well being. To do so can only bring the courts into disfavor, without staying materially the processes of progress and betterment. Whether for good or evil, we are committed to the theory of democratic government, through whose agency the people must work out their own salvation. In this process, mistakes will be made, but the people must be permitted to make mistakes, if they are to remain free to govern themselves. Recent experience has conclusively demonstrated that, when mistakes are made through ill-considered and hasty legislation, a ready remedy is at hand for their correction."

Suppose the legislature had enacted a statute providing that no man, woman or child should be employed in any barber shop within this State except from 8 a. m. to 6 p. m. of every day, except Sunday during which day they should not be employed at all. And suppose such legislation were judicially challenged on all of the grounds relied upon by the plaintiffs in attacking the ordinance in question. Would

not this court, pointing to the Constitution (1908, art. 5, § 29), which provides: ''The legislature shall have power to enact laws relative to the hours and conditions under which men, women and children may be employed,'' answer, Such law is not only not prohibited by the Constitution of this State, but is expressly authorized by the Constitution to be enacted?

When we consider the terms of the ordinance in question, the nature of the police power, the decisions of the Supreme Court of the United States, the holdings of this court upon the State statute for Sunday closing of barber shops and of the Lansing ordinance for the Sunday closing of groceries and meat markets, the opinions of other States upholding ordinances similar to that here involved, the dissenting opinions when such ordinances have elsewhere been declared invalid, the express provision of the Constitution of this State, the broad powers of the home rule enabling act, and the terms of the charter of the city of Detroit, it is at least doubtful whether the ordinance in question is invalid because violating the Constitution of this State or of the United States. And in all cases of doubt, the legislation under consideration ought to be held valid.

Decree of the trial court should be reversed, and decree be entered for defendants. No costs, a public question being involved.