### ZANESVILLE (city) v WILSON

Municipal Court of Zanesville

No 15044. Decided Dec 20, 1934

56

Graham & Graham, Zanesville, for plaintiff.

William Freilich, Zanesville, for. defendant.

## OPINION

By KNAPP, J.

The court is of the opinion that the affidavit is proper in its form and sufficiently states the offense with which the defendant is charged, and, further, that the court has jurisdiction of the defendant and of the offense.

The point of real concern, however, to the court is that of the constitutionality of the ordinance. If the ordinance can be sustained at all, it must be sustained as being a valid exercise by the municipality of the police power expressly or impliedly conferred by the State Legislature, the State Constitution, or fairly included in the grant of powers by its charter.

A municipal corporation has no inherent power to enact police regulations, but derives it solely from the Legislature, and consequently can exercise only such police power as is fairly included in the grant of powers by its charter.

Champer v Greencastle, 138 Ind., 339, 35 NE, 14; State v Itzkovitch, 21 So., 544, 37 L.R.A., 673; Collins v Hatch, 18 O., 523, 51 American' Decisions, 465.

The source from which the municipalities of Ohio derive their police power is found in **Article 18, §3, of the .Ohio Constitution,** which reads as follows:

"Municipalities shall have authority to exercise all powers of local self-government

and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

Under the authority of §3, just quoted, a municipal corporation, under its police power, may regulate any trade, occupation or business, the unrestrained pursuit of which might affect injuriously the public health, morals, safety or comfort. It may adopt such sanitary regulations as may be required to provide for the safety and preserve the health of its occupants, and it may regulate the erection of buildings, fences, bill boards and the like.

19 Ruling Case Law, 818.
Bliss v Kraus, 16 Oh St; 54, 8 O. Jur., p. 432.

It is a fundamental principle of law, however, that all police regulations must be reasonable and not arbitrary and oppressive. Among the many citations which might be noted, are:
Williams v Scudder, 102 Oh St, 305, 131 NE, 431; C. A. King & Co. v Horton, 116 Oh St, 205, 156 NE, 124; Sanning v Cincinnati, 81 Oh St, 142, 25 L.R.A. (N.S.), 686, 90 NE, 125. State Board of Health v Greencastle, 86 Oh St, 1, 98 NE, 1019.

Neither the state, in the passage of general laws, nor municipalities, in the enactment of local legislation, may make any regulations which are unreasonable.
Toledo Disposal Co v State, 89 Oh St, 230, 106 NE, 6; State v Norval Hotel Co., 103 Oh St, 361, 133 NE, 75.

The police power includes anything which is reasonably necessary and appropriate to secure the peace, order, protection, safety, good health, comfort, quiet, morals, welfare, prosperity, convenience, and best interests of the public.
8 O. Jur., 334.

In determining the constitutionality of an ordinance as measured by the police power, it has been said that the only inquiries essential are:
First, whether the ordinance is an unreasonable, arbitrary and an oppressive exercise of the police power; and, second, whether it is reasonably designed to accomplish a purpose falling within the scope of the police power.
Bliss v Kraus, 16 Oh St, 54.

The benefits to society reasonably to be expected must not be out of proportion to the restraint imposed and the detriment inflicted on citizens by such restraint.
Solomon v Cleveland, 26 Oh Ap, 19, 159 NE 121, (6 Abs 156).

The courts will not assume to interfere with the exercise of legislative discretion unless it can be made clearly to appear that the Act assailed does not reasonably tend to accomplish the lawful object for which it was passed.
State v Hanlon, 77 Oh St, 19, 82 NE, 662.

It is within the power of the State or a municipality to devise the means to be employed to accomplish the ends and purposes of the police power so long as such means do not go beyond the necessities of the case and have a real and substantial relation to the object to be accomplished.
C. A. King & Co. v Horton, 116 Oh St, 205, 156 NE, 124.

A mere declaration in a statute or ordinance that it is enacted to protect public safety, health or morals, will not alone make it valid as being within the police power, unless there is some reasonable relation between such purpose and the regulations prescribed.
Youngstown v Kahn Bros. Building Co., 112 Oh St, 654, 148 NE, 842.

The broad discretion vested in the State through its police power is fraught with dangers to the personal and property rights of private persons, and therefore the courts have always asserted the right to restrain the exercise of the power to the extent that private rights may not be oppressively or unreasonably infringed.

During the argument of the case it was strongly urged by the prosecution that the municipality through its council having determined that the ordinance was one designed to protect the public health and a reasonable restraint in order to afford such protection, it is not within the province of a court to inquire into the reasonableness or the necessity of the provisions of the ordinance. The same was urged particularly for the reason that since it was maintained that the State Legislature could act on matters of like import and that the courts could not go into the legislative intent or judgment as to the reasonableness of its acts, a like situation exists as to the powers of the court with regard to municipal enactments. The court, however, is not in accord with the premise nor with the conclusion of this reasoning.

While not determining whether or not a court can go into the reasonableness of the Legislature's provisions, this court is of the opinion that, regardless of that point, any municipal legislation can be carefully scrutinized. The acts of the State Legislature are those of a body which is a coordinate one with the judiciary. However, the acts of a city council are not on a parity with those of the State Legislature. The

source from which the City Council derives its authority is not as co-extensive as that from which the Legislature derives its power and it must be conceded there is much more need for inquiry into municipal legislation than of State legislation.

In other words, the "dimensions" of police power of the State Legislature far transcend those of the city council, although in both cases the powers exercised are similar and fall into much the same grouping. The acts of the State Legislature are those of a body far more "sovereign" than can in any wise be claimed for a municipal council.

This court is rather of the opinion that if this ordinance was passed under an express authorization by the State Legislature so to do, that the question as to whether the same is reasonable or not might not be a fit one for a court to pass upon, but in the instant case the ordinance is one passed in pursuance of a general grant of police power and is not specially authorized, and it is therefore one upon which the court not only can but must determine the reasonableness thereof.

The case involving the regulation of laundries by State Legislatures are not controlling in this matter, in as much as in those decisions the courts find a definite and reasonable relationship to the protection of public safety because of the fact that the laundries had been operating at night and in a district where there were many wooden dwellings and under such circumstances as to constitute a positive fire menace. The reasonableness of the regulations were apparent.

The cases wherein the number of hours that a baker could work were limited, again show a reasonable regulation, because the protection of the health of the baker, working under the conditions in which he found himself, was plainly secured and the regulations clearly tended to produce the result desired.

The case of Allion v The City of Toledo, 99 Oh St, 416, is found by this court not to be controlling, for the reason that that city ordinance was designed to protect the public against fraud and was clearly designed to accomplish that end.

The same is true of the cases determining the power of cities to regulate junk dealers and pawn shops or to provide for the protection of the public health or safety by the enactment of safety doors and other building regulations.

In the ordinance in question there are no provisions regulating such things, for example, as the sterilization of barbers' implements, the use of astringents, and re-use of towels and other laundry, but an attempt was made merely to regulate the opening and closing of barber shops, in the guise of a public health regulation.

If, as is urged by the prosecution, ordinances similar to this one can be passed and the courts precluded from inquiring into the reasonableness of the legislators' intent, what would prevent the passage of an ordinance declaring it to be unlawful for a department store to open its doors and do business before the hour of ten in the morning or after the hour of two in the afternoon, or declaring it unlawful for a garage to be open before or after such hours?

Allowing every presumption in favor of the constitutionality of the ordinance, of its reasonableness and of its validity, the court fails to see wherein this ordinance, except in its foreword, in any wise is designed to protect the public health and welfare of the people of Zanesville. It certainly can not be maintained that a barber shop is per se a nuisance, nor that it tends to stimulate wrong doing on the part of the body politic.

The only' angle under which this ordinance could be sustained is that it is a health regulation.

This court will readily admit that many barber shops may be fruitful as spreaders of contagious disease, and surely because of this fact the State Legislature of Ohio has seen fit to regulate rather strictly the operation of barber and beauty shops. The numerous regulations, with severe penalties for the violations thereof, that have been passed by the Legislature do protect in great measure the public health from the dangers inherent in the operation of shops which are insanitary. However, the fact that the State has acted in this matter does not justify any and all regulations that a municipality may wish to impose upon a barber or beauty shop. It was maintained during the arguments that this ordinance protects the public health in that it limits the time during which the shops are open and hence reduces the period during which inspection of the same may be necessitated. Such an argument, however, would appear to carry with it an assumption that those barbers doing business before or after the hours set out in the ordinance would be more prone to violate the health regulations, which, of course, appears on its face as being poor reasoning. We must presume that all citizens in the business are innocent of any misconduct or violation of any law or regulation.

It is hard to see wherein operation before or after the hours set out in the ordinance can of itself or might have any greater tendency to affect the public health than operation during the hours permitted. It must be admitted, that in the present day and age there is no reason, possibly, for certain trades or establishments to keep open for as many hours as they do, particularly in view of the amount of work and trade that there is now; and in view of the trend towards shorter hours of labor and more time for leisure, it is likely certain that what barbering there is to be done, could well be accomplished within the hours set out by the ordinance. On the other hand, this court is of the opinion that, desirable as these hours may be, the same must be determined upon and followed by the mutual consent and agreement of. the trade or profession, rather than through municipal regulation. The end sought does not necessarily determine the legality of the means employed.

In the instant case, the rights of private citizens to pursue their trade or calling are being infringed upon, and the only justification that can be urged for the same is that the action taken lies within the purview of the police power. It may be well to call attention to the fact that considerable of the barbering that is done outside of the hours set forth by the ordinance is done by citizens who are attempting to supplement their meagre income from other sources, and to restrain them, without their consent, by an ordinance of this type would but further add to the already difficult burdens which they bear. These citizens, of course, in order to barber must comply with the State laws regarding the securing of a license, and so on, and having been thus authorized by the State, without any limitation upon the hours during which they may labor at their trade, it would appear that their inherent rights are being taken away unnecessarily by this legislation.

As stated hereinbefore, the court feels that the ordinance as passed, while ostensibly to protect the public. health, does not have a real or substantial relation thereto; as is required by. the law.

Mugler v Kansas, 123 U. S., 623, 31 L. Ed., 205.

A regulation that bears no real or substantial relation to that purpose is an arbitrary interference with a lawful and useful business.

Chaires v Atlanta, 164 Ga., 755, 139 SE, 559; Timmons v Morris, D. C., 271 F. 721.

Unless the closing regulation in question in the case at bar bears a real and substantial relation to the purpose of protecting the public from the spread of disease, it stands on the same footing as any similar restriction on the right of a citizen to engage in a harmless and useful occupation.

State v Ray, 131 N. C., 814, 42 SE, 960.

In the case of Falco v Atlantic City, the closing hours are there supposed to have been fixed to facilitate inspection, and that court apparently upheld the same as a reasonable regulation for that purpose. However, there is nothing in the ordinance to show that the city council thought there was a need to close the shops in order more readily to inspect them or that it was necessary to facilitate inspection.

Laws prescribing sanitary regulations requiring maintenance of safety devices and the labelling of compounds abound in the statutes of this and other states. Most of them provide for inspections, but it is only in a few recent cases that it has been supposed that the right to inspect includes the right to restrain the operation of the business by fixing closing hours.

It will readily be seen that a principle which would permit the closing of barber shops as a reasonable exercise of the power to inspect, would permit a like restriction in regard to many other businesses which are regulated under the police power.

A similar view is maintained in a case much in point—State ex Newman v City of Laramie et, 275 Pacific, 106.

"The court is not willing to suppose that the absence of closing regulations might render effective inspection impossible, although it is true that it might render it more inconvenient and perhaps more expensive. If that be so, a weighing of the conflicting interests—that of the barber to pursue a useful occupation, so long as he complies with the sanitary regulations, and that of the public to have the shop inspected, makes it reasonable to suppose that it is intended that the inconvenience and expense of inspection, if not covered by the license fees, should be borne by the public, instead of intending that the city authorities should fix an arbitrary closing hour."

The court is of the opinion that the provisions complained of are not a reasonable exercise of the police power, and are therefore unauthorized and void.

Motion overruled.

Demurrer sustained,