We find no other errors prejudicial to the plaintiff in error.

The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

*Judgment reversed and cause remanded.*

Ross, P. J., and HAMILTON, J., concur.

CITY OF ZANESVILLE *v.* WILSON.

(Decided March 30, 1935.)

*Mr. Clarence Graham,* for plaintiff in error.
*Mr. William Freilich,* for defendant in error.

SHERICK, J. This action originated in the Municipal Court of the city of Zanesville. Therein the defendant, Wesley Wilson, stood charged by affidavit with having violated the provisions of the following city ordinance:

"Section 10: It shall be unlawful for any person, persons, firm or corporation to operate, maintain, or conduct any barber shop or any place wherein barbering is done, in the City of Zanesville, Ohio, to be open for the business of barbering for revenue, pay, free or otherwise, before eight o'clock, a. m., and after six o'clock, p. m., on the following days, to-wit: Monday, Tuesday, Wednesday, and Friday of each and every week."

The specific complaint is in that Wilson unlawfully kept his place of business open for barbering after the hour of six o'clock, p. m. To this affidavit the defendant in error demurred upon the ground that the ordinance was unconstitutional. It was then and is now claimed that the ordinance is an unreasonable interference with personal rights, is without any reasonable relation to public health, and is not sustainable upon any theory of a valid exercise of police power. The trial court sustained the demurrer, and the city prosecuted error to the Court of Common Pleas. That court seems to have quickly affirmed the judgment, with the thought in mind that a review of the proceeding was soon to be had in this court.

Before proceeding to a consideration of the question we are called upon to consider a motion of the defendant in error, which attacks the jurisdiction of this court to review the judgment. Section 6, Article IV of the Ohio Constitution, fully prescribes the jurisdiction of this court, and, as held in *State* v. *Blair,* 24 Ohio App., 413, 157 N. E., 801, the Court of Appeals "need no longer examine statutes to determine its

jurisdiction." That court correctly held in its second paragraph of the syllabus, that the

"Discharge of accused in criminal case on demurrer to indictment is 'final' adjudication of rights of parties under indictment, and is such a judgment as supports proceeding in error."

To say that the state might not prosecute error from an order which would discharge the accused before defendant had been put in jeopardy would be but to hamstring the state in criminal prosecutions. See also *State* v. *McNary,* 49 Ohio App., 23, 195 N. E., 243.

It is likewise urged that this motion should be sustained for the further reason that the city is not represented by its solicitor. We also find before us a motion by the city solicitor requesting this court to consider appearing counsel for it as special counsel for the city. This motion further recites that said special counsel is rendering such service without pay or promise of compensation or reward. We see no substantial reason why a city or its solicitor may not in such a case accept such services and be represented by special counsel. The city's motion is therefore sustained.

And now, pursuing the question at issue, the frequently quoted Section 3 of Article XVIII of the Ohio Constitution must be considered, from which municipalities, charter cities or others, derive their authority "to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." It is conceded that the Legislature has not spoken with reference to closing hours for barber shops. It therefore follows that there is no "conflict" with any general legislative act which might make the ordinance invalid by reason thereof. We have been favored in brief and oral argument with authorities pro and con as to the reasonableness and constitutionality of the ordinance with respect to the

Ohio Constitution, but the authorities of this and sister jurisdictions submitted are of little moment by reason of a further provision of the State Constitution as amended in 1912, which seemingly does not appear in the Constitutions of sister states. We refer to Section 34 of Article II, which counsel have unfortunately overlooked. It is therein provided:

"Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employes; and no other provision of the constitution shall impair or limit this power."

We further perceive that by Section 37 of Article II the people of this state have positively declared that except in cases of extraordinary emergencies an eight hour day's labor shall constitute a day's work on public works. This section was considered in *Stange* v. *City of Cleveland*, 94 Ohio St., 377, 114 N. E., 261. Section 17-1, General Code, is legislative expression of this constitutional provision, which was considered not to be self-executing. The court in the *Stange case*, in speaking of a Cleveland ordinance on the same subject, had this to say:

"The effect of the provision was the same as though the state had enacted no law as to such contracts until July 1, 1915, and the city was free to make such a local police regulation touching the subject as it saw fit. If, after the statute became effective, the ordinance should conflict in anywise with it, the ordinance of course must yield."

This case is important in three respects. It recognizes the municipalities' right to legislate, in view of Sections 34 and 37 of Article II; that it is a proper invocation of the police power, and that it does not deprive one of his liberty or property without due process of law and equal protection of the law as guaranteed under the Federal Constitution.

Section 6241, General Code, enacted prior to 1912,

prescribes that "a day's work in a mechanical, manufacturing or mining business shall consist of eight hours and be so enforced unless the contract therefor expressly provides otherwise." In 1919, Section 1008, General Code, was enacted, which prescribed the maximum hours that a female might be employed in a given day or week in certain occupations. Section 1008 is held to be constitutional in *In re Hawley*, 85 Ohio St., 494, 98 N. E., 1126, and *Hawley v. Walker*, 232 U. S., 718, 58 L. Ed., 813, 34 S. Ct., 479.

These related provisions, constitutional and statutory, are advanced in view of what shall be hereinafter said. Their notation is further pertinent in the light of the expression of Judge Dillon in *In re Hawley*, 12 N. P. (N. S.), 1, 22 O. D. (N. P.), 39, and the reason therein, which is approved of in *In re Hawley, supra,* wherein it is said:

"It must be conceded that that which was not public welfare fifty years ago, under the then conditions of society, morals, necessities, and commercial conditions, may in this present age be considered public welfare."

If such was true twenty-five years ago, it is now much more so. Had the framers of the Federal Constitution, and its chief expounder, Chief Justice Marshall, failed to perceive that the Constitution must be ever expanding to meet the exigencies of progress, it would have become a straight jacket and the government created under it still-born. This court must ever be conscious that the people of Ohio in the adoption of Section 34 of Article II unqualifiedly voiced expression of enlargement of the police power; and unless it can be clearly shown that this ordinance impairs those rights now claimed thereby to be by it invaded, and which are recognized not only in the Federal Constitution but in the State Constitution as well, it is the duty of this court to give approval to the restrictions upon those rights which time and progress have made

imperative, and which the people of this state have clearly voiced.

We further recognize it as a duty upon this or any state court to keep ever before it that the Federal Constitution is the supreme law of the land, and to say in proper case, as was said in *People* v. *Western Union Telegraph Co.*, 70 Colo., 90, 198 P., 146, 15 A. L. R., 326, that:

"Any section of the state constitution which is contrary to the Federal Constitution is &ast; &ast; &ast; null and void."

In *Iowa Motor Vehicle Assoc.* v. *Railroad Commissioners,* 207 Iowa, 461, 221 N. W., 364, 75 A. L. R., 1, which was affirmed in 280 U. S., 529, 74 L. Ed., 595, 50 S. Ct., 151, without opinion, it is held:

"The Constitution of the United States is the supreme law, anything in the Constitutions or statutes of the states to the contrary notwithstanding, and a statute of a state, even when avowedly enacted in the exercise of its police powers, must yield to that law. As said in *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S., 540, 22 S. Ct., 431, 46 L. Ed., 679; 'No right granted or secured by the Constitution of the United States can be impaired or destroyed by a state enactment, whatever may be the source from which the power to pass such enactment may have been derived.'"

With these thoughts in mind we shall now consider that which is the perplexing problem in this review, which only the Federal Supreme Court might readily solve, unfettered by allegiance as it is; and as we are not by reason of the provisions of Section 34 of Article II of the State Constitution. Are this ordinance and the state constitutional provision clearly arbitrary, unreasonable, discriminatory and repugnant to the rights of the defendant in error, as guaranteed by the strict letter of the Federal Constitution; or, is the business of barbering, or the health and welfare of those who work in barber shops, such a present public concern

as would warrant a restriction upon one's right under an exercise of an enlarged police power to regulate that business by prescribing the hours within which such may be engaged in the city of Zanesville? What we hereinafter propose to say is pertinent to the business of barbering, and to no other.

In the first place we will say that the business is perfectly legitimate, and is hardly subject to regulation upon any moral ground, as are dance halls, pool rooms or other like places. Neither may that business be likened to a mercantile establishment where the public is invited to shop. It is in one sense professional in its character of service, that is, its purpose is to do for those of the public who enter a purely personal service, wherein cleanliness and sterilization of implements and tools of the trade are matters of public concern, without which patrons may become the innocent victims of communicable disease, or the unintentional conveyors of such to those who are not patrons. In congested communities like Zanesville barbers may not know all their patrons, and unless care be taken skin and blood diseases may be easily communicated by the artisan's own careless act. The Ohio Legislature, following the lead of sister states, last year enacted the Ohio Barber Code, at the insistence of the barbers themselves. This act is now embraced in Sections 1081-1 to 1081-27, inclusive, General Code. Upon authority of Section 1081-5, and "subject to the approval of the state department of health," the State Board of Barber Examiners adopted certain rules and regulations to make and keep barber shops clean and sanitary and subject to inspection during business hours. State inspectors are now appointed and engaged in making examination of shops. Surely it can not now be successfully maintained that barber shop conditions are not a subject of regulation by state government agencies upon the theory of health requirements, under the police power of the state.

Section 34 of Article II of the State Constitution bases its purpose upon the welfare of employees. That also has for its object the relief from long hours of labor, and concern for the health of those so engaged. So that both sanitary regulation and hours of labor of employees have in common the thought of public health supervision. It is claimed by the defendant that the ordinance is particularly obnoxious to the Fourteenth Amendment of the Federal Constitution. This can hardly be true, for as held in *Mugler* v. *Kansas,* 123 U. S., 623, 31 L. Ed., 205, 8 S. Ct., 273:

"No one may rightfully do that which the law-making power, upon reasonable grounds, declares to be prejudicial to the general welfare."

"This conclusion is unavoidable, unless the Fourteenth Amendment of the Constitution takes from the States of the Union those powers of police that were reserved at the time the original Constitution was adopted. But this court has declared, upon full consideration, in *Barbier* v. *Connolly,* 113 U. S., 27, 31, 28 L. Ed., 923, 5 S. Ct., 357, that the Fourteenth Amendment had no such effect. * * * But neither the amendment broad and comprehensive as it is—nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people."

And as further stated therein, those rights which are now claimed to have been abridged are found within the Constitution itself. It therefore becomes the duty of courts to protect those rights, not unqualifiedly, however, but with the purpose of harmonizing those guaranties with the police power reserved to the several states to enact such legislation as is deemed necessary for the protection of the health of its people. In the present instance it all simmers down to the question: Has the state or its agency in the enactment of a health measure reasonably acted, as a means

to that end, in prescribing that barber shops in Zanesville should be closed at a certain hour?

As hereinbefore pointed out the means employed are referable to two theories: First, that it is necessary or conducive to an effective enforcement of a legal health measure for a public good; second, for the welfare of all employees engaged in that business in the city of Zanesville. In the *Barbier case, supra,* a similar closing ordinance was upheld upon the theory of fire protection within a limited city district. In *Hing* v. *Crowley,* 113 U. S., 703, 28 L. Ed., 1145, 5 S. Ct., 730, it is said:

"The specific regulations for one kind of business, which may be necessary for the protection of the public, can never be the just ground of complaint because like restrictions are not imposed upon other business of a different kind. The discriminations which are open to objection are those where persons engaged in the same business are subjected to different restrictions, or are held entitled to different privileges under the same conditions. It is only then that the discrimination can be said to impair that equal right which all can claim in the enforcement of the laws."

The court therein further reasoned in answer to an objection similar to one here interposed:

"The objection that the fourth section (of the ordinance) is void on the ground that it deprives a man of the right to work at all times is equally without force. However broad the right of every one to follow such calling and employ his time as he may judge most conducive to his interests, it must be exercised subject to such general rules as are adopted by society for the common welfare. All sorts of restrictions are imposed upon the actions of men notwithstanding the liberty which is guaranteed to each. It is liberty regulated by just and impartial laws. Parties, for example, are free to make any contracts they choose for a lawful purpose, but society says what contracts shall be in writ-

ing and what may be verbally made, and on what days they may be executed, and how long they may be enforced if their terms are not complied with. So, too, with hours of labor. On few subjects has there been more regulation. How many hours shall constitute a day's work in the absence of contract, at what time shops in our cities shall close at night, are constant subjects of legislation. Laws setting aside Sunday as a day of rest are upheld, not from any right of the government to legislate for the promotion of religious observances, but from its right to protect all persons from the physical and moral debasement which comes from uninterrupted labor. Such laws have always been deemed beneficent and merciful laws, especially to the poor and dependent, to the laborers in our factories and workshops and in the heated rooms of our cities; and their validity has been sustained by the highest courts of the States.''

In *Falco, Prosecutor,* v. *Atlantic City,* 99 N. J. L., 19, 122 A., 610, is to be found a case which approves of a closing ordinance of like character upon the sole ground that it is an aid to proper inspection and accomplishment of health regulations. The ordinance was held constitutional. But we are also cited to *State, ex rel. Newman,* v. *City of Laramie,* 40 Wyo., 74, 275 P., 106. This case, however, is not decided upon constitutional grounds. It is remarked that ''in the case at bar, the city's power to fix closing hours does not arise from a specific grant.'' Had Wyoming a constitutional provision like Section 34 of Article II of the Ohio Constitution its conclusion would without doubt have been otherwise. We are appreciative of the fact that other state cases are to be found holding closing ordinances like the one in question to be unreasonable, but inasmuch as the crux of this suit is purely federal in character we without hesitation announce our inclination to follow the United States Supreme Court.

We are further guided by the first paragraph of the

syllabus of *Allion* v. *City of Toledo,* 99 Ohio St., 416, 124 N. E., 237, wherein it is said:

"Unless there is a clear and palpable abuse of power, a court will not substitute its judgment for legislative discretion. Local authorities are presumed to be familiar with local conditions and to know the needs of the community."

See, also, *State, ex rel. Standard Oil Co.,* v. *Combs, Dir. of Pub. Serv.,* 129 Ohio St., 251, 194 N. E., 875.

It must follow, as the judgment of this court, that the trial court improperly sustained the demurrer to the affidavit. The cause is reversed and remanded to the Municipal Court with instruction to overrule the demurrer, and for such further proceedings as the law prescribes.

*Judgment reversed and cause remanded.*

LEMERT, P. J., concurs.

MONTGOMERY, J., concurs in the judgment, in view of Article II, Section 34 of the Constitution of the State of Ohio, and in view of the holding of the Supreme Court of the United States in the case of *Mugler* v. *Kansas,* 123 U. S., 623, 31 L. Ed., 205, 8 S. Ct., 273.