FELDMAN v. CITY OF CINCINNATI et al., and three other cases.
Nos. 1005–1008.

District Court, S. D. of Ohio, W. D.
July 12, 1937.

Morris Feldman, of Cincinnati, Ohio, for plaintiff Feldman.

Alphonse G. Riesenberg, of Cincinnati, Ohio, for plaintiff Heimerdinger.

Stricker & Johnson, of Cincinnati, Ohio, for plaintiff Terminal Barber Shops, Inc.

Myron H. Beitman, of Cincinnati, Ohio, for plaintiff Faulkner, Glacken & Corres, Inc.

John D. Ellis, City Sol., and Francis T. Bartlett and Ed F. Alexander, Asst. Sol., all of Cincinnati, Ohio, for defendants.

NEVIN, District Judge.

These cases are in this court upon pleadings filed as follows: In cause No. 1005 plaintiff filed his petition on January 2, 1937, to which defendant filed its answer on January 18, 1937. On March 4, 1937, by leave of court, plaintiff filed an amended petition. The answer remained as the answer to the amended petition. In cause No. 1006 the petition was filed on January 4, 1937, and the answer thereto on January 18, 1937. In cause No. 1007 the bill of complaint was filed on January 18, 1937, and the answer thereto on February 20, 1937. In cause No. 1008 the bill of complaint was filed on January 23, 1937, and the answer thereto on March 1, 1937.

Each case is separate and distinct from the other. The plaintiff is different in the respective cases. The defendants in all of the cases, however, are substantially the same, being in each instance the City of Cincinnati and some of its officials. In each case the court is asked to enjoin the enforcement of Ordinance No. 306-1936 of the Code of Ordinances of the City of Cincinnati, Ohio, upon the ground that the ordinance is unconstitutional and therefore null, void, and of no effect.

Plaintiffs collectively assert that the ordinance in question is in violation of certain sections of the Constitution of the State of Ohio, as follows: Cause No. 1005 charges violation of "Article 1, Section 1 of the Bill of Rights of the Constitution of the State of Ohio"; No. 1006 charges violation of "Section 19, Article 1, of the Constitution of the State of Ohio"; No. 1007 charges violation of "Section 34, Article 2, of the Constitution of Ohio," and of "Sections 3 and 7 of Article 18 of the Constitution of Ohio"; and No. 1008 charges violation of "the Constitution of the State of Ohio."

It is charged in each case that the ordinance is in violation of the Fourteenth Amendment to the Constitution of the United States, in that it deprives plaintiff in each instance of his or its liberty and property without due process of law, and by some that it violates the Fifth Amendment to the Constitution of the United States, in that it interferes with the liberty and freedom of contract. Plaintiffs claim that the ordinance is arbitrary, discriminatory and unreasonable and beyond the power of the City of Cincinnati to enact, and that the ordinance is not, as recited in its caption, in the interest of the public health, safety, and welfare.

The answer in each instance admits the formal allegations of the bill or petition, but denies in each instance that plaintiff will suffer irreparable loss and that the ordinance is in any respect unconstitutional, or that it is discriminatory, unreasonable, or arbitrary, or an abuse of the police power. In case No. 1007 there is a further denial to the effect that the matter in controversy exceeds, exclusive of interest and costs, the sum and value of $3,000. Defendants pray in each instance to have the bill or petition dismissed.

The cases were not consolidated for trial, so that each case is before the court upon its own record. However, by consent of all parties thereto, a hearing was held and evidence introduced at the same time with respect to cases Nos. 1005, 1006, and 1008. This hearing started on March 15, 1937. Subsequently, a separate hearing was held and evidence introduced in case No. 1007, on June 10, 1937. Much of the testimony offered and some of the documentary evidence admitted by way of exhibits the court felt and stated at the time appeared to be irrelevant and immaterial. It was concerning matters which properly might have been, and perhaps were, presented to the city council when that legislative body had the ordinance before it for consideration. This is true also of some of the arguments now advanced. Some testimony consisting wholly of the opinions of witnesses was entirely incompetent. As the record discloses, this evidence was permitted solely in order that all parties might thus present fully in the record their respective claims and theories, it being agreed that this procedure was in the interest of expedition and economy.

In its determination, however, of the issues involved, the court has considered only such evidence as it deems competent. From the competent evidence, the court

finds that it has jurisdiction and that the matter in controversy, exclusive of interest and costs, exceeds in each case the sum and value of $3,000.

Before entering upon a discussion of the questions presented, it seems pertinent to point out clearly just what is now before the court for its consideration and what is not, and to call attention to some fundamental principles which are so well settled as scarcely to need supporting citation.

█ In the instant cases the court has no right to consider or pass upon the wisdom of the legislation. This has been uniformly and repeatedly so decided, but nowhere better stated than by the Supreme Court in Nebbia v. New York (decided, March 5, 1934) 291 U.S. 502, at pages 537, 538, 54 S.Ct. 505, 516, 78 L.Ed. 940, 89 A.L.R. 1469, where the court say: "With the wisdom of the policy adopted, with the adequacy or practicability of the law enacted to forward it, the courts are both incompetent and unauthorized to deal. The course of decision in this court exhibits a firm adherence to these principles. Times without number we have said that the Legislature is primarily the judge of the necessity of such an enactment, that every possible presumption is in favor of its validity, and that though the court may hold views inconsistent with the wisdom of the law, it may not be annulled unless palpably in excess of legislative power."

And again, in Arizona Employers' Liability Cases, 250 U.S. 400, at page 419, 39 S.Ct. 553, 555, 63 L.Ed. 1058, 6 A.L.R. 1537, where the court say: "Novelty is not a constitutional objection * * * States are left with a wide range of legislative discretion * * * and their conclusions respecting the wisdom of their legislative acts are not reviewable by the courts."

█ Nor can the court inquire into or concern itself with the motives, either of those who prompted the legislation or the members of council, who supported it and by whose vote it was enacted.

In Soon Hing v. Crowley, 113 U.S. 703, at page 710, 5 S.Ct. 730, 734, 28 L.Ed. 1145 (involving the constitutionality of an ordinance of the City of San Francisco), the court say: "And the rule is general, with reference to the enactments of all legislative bodies, that the courts cannot inquire into the motives of the legislators in passing them".

To the same effect, U. S. v. Des Moines Nav. & Railway Co., 142 U.S. 510, 12 S. Ct. 308, 35 L.Ed. 1099; Doyle v. Insurance Co., 94 U.S. 535, 24 L.Ed. 148; Yee Gee v. San Francisco (D.C.) 235 F. 757, 760.

The ordinance in question was passed by the council of the City of Cincinnati, Ohio, on December 2, 1936. It is entitled and reads as follows:

"An Ordinance No. 306—1936

"Prescribing the hours during which barber shops may be open for business by ordaining supplementary Sections 523—1, 523—2 and 523—3 of the Code of Ordinances.

"Whereas, in the opinion of Council it is in the interest of the public health, safety and welfare, to regulate the hours of business of barber shops; now, therefore,

"Be It Ordained by the Council of the City of Cincinnati, State of Ohio:

"Section 1. That the Code of Ordinances is hereby supplemented by ordaining Sections 523—1, 523—2 and 523—3 to read as follows:

"Sec. 523—1. It shall be unlawful for the owner of any barber shop or for any agent or employe of such owner to permit such barber shop to be open for the business of barbering for revenue, pay, free or otherwise, on Sundays, New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas Day or at any times other than the following:

"(a) From 8:00 o'clock a. m. to 7:00 o'clock p. m. on Mondays, Tuesdays, Wednesdays, Thursdays and Fridays, when they do not precede any of the aforementioned holidays;

"(b) From 8:00 o'clock a. m. to 8:00 o'clock p. m. on Saturdays and on any other week day when such week day immediately precedes any of the aforementioned holidays.

"Sec. 523—2. Except during the business hours permitted by Sec. 523—1, every barber shop shall be entirely closed and it shall be unlawful, by the use of blinds, shades, screens, painted or frosted glass or any other device, to prevent a free and unobstructed view of any such barber shop.

"Sec. 523—3. Any person violating Section 523—1, or Section 523—2 shall be

fined not more than $200.00. Each day's violation shall constitute a separate offense.

"Section 2. This ordinance shall take effect and be in force from and after the earliest period allowed by law."

An ordinance identical with the foregoing (except as to the prescribed hours) was passed by the city council of the City of Zanesville, Ohio, on August 13, 1934. Its validity was challenged upon exactly the same grounds as those relied upon by the various plaintiffs here. Wesley Wilson, owner of his own barbershop, was charged in the municipal court of the City of Zanesville, Ohio, with keeping his barbershop open after 6 o'clock p. m., on a certain date in violation of the ordinance. A demurrer was filed to the affidavit upon the ground "that the ordinance on which it was based is in contravention of the Constitution of Ohio, and particularly the Fourteenth Amendment to the Constitution of the United States, and therefore was not a proper exercise of the police power." The case eventually reached the Supreme Court of Ohio. Wilson v. Zanesville, 130 Ohio St. 286, 199 N.E. 187, decided December 18, 1935. In that case the Supreme Court of Ohio determined that such an ordinance does not violate the Constitution of the State of Ohio.

In view of this determination, this court will not further consider that question.

In their brief (page 12) in the Feldman case (No. 1005) counsel for plaintiff say: "This plaintiff will concede that a federal court must follow and be guided by the decisions of the highest court of a state upon the question of whether a statute or ordinance violates the Constitution of that state."

In Barbier v. Connolly, 113 U.S. 27, at pages 29, 30, 5 S.Ct. 357, 358, 28 L.Ed. 923 (involving a municipal ordinance), the court say: "In this case we can only consider whether the fourth section of the ordinance of the city and county of San Francisco is in conflict with the constitution or laws of the United States. We cannot pass upon the conformity of that section with the requirements of the constitution of the state. Our jurisdiction is confined to a consideration of the federal question involved".

Again, in Coombes v. Getz, 285 U.S. 434, at page 441, 52 S.Ct. 435, 436, 76 L.Ed. 866, the court say: "The decision of the Supreme Court of a state constru-

ing and applying its own Constitution and laws generally is binding upon this court; but that is not so where the contract clause of the Federal Constitution is involved." Maguire v. Reardon, 255 U.S. 271, 273, 41 S.Ct. 255, 65 L.Ed. 625; Arizona Employers' Liability Cases, 250 U.S. 400, 419, 39 S.Ct. 553, 63 L.Ed. 1058, 6 A.L.R. 1537; Concordia Ins. Co. v. School Dist., 282 U.S. 545, 552, 51 S.Ct. 275, 277, 75 L.Ed. 528.

The question then before this court is, Does the ordinance violate any of the provisions of the Constitution of the United States? As stated, it is urged by all plaintiffs that the ordinance in question violates the Fourteenth Amendment, and by some that it also violates the Fifth Amendment, to the Federal Constitution.

The Fifth Amendment is generally understood to be a restriction upon Congress, whereas the Fourteenth Amendment has reference to action by the States. In the Nebbia Case, supra, the Supreme Court (at page 525 of 291 U.S., 54 S.Ct. 505, 510, 78 L.Ed. 940, 89 A.L.R. 1469) say: "The Fifth Amendment, in the field of federal activity, and the Fourteenth, as respects state action, do not prohibit governmental regulation for the public welfare."

This leaves as the principal question, then, Does the ordinance violate the Fourteenth Amendment to the Federal Constitution? This question was also presented to and considered by the Supreme Court of Ohio in Wilson v. Zanesville, supra. Plaintiffs not only challenge the soundness of the decision in the Zanesville Case (stressing particularly what is stated in the dissenting opinions), but claim that, because no reference is made in the syllabus, either to the Fifth or Fourteenth Federal Amendments, the Supreme Court expressed no opinion with reference thereto.

While it is true that in the syllabus no reference is made specifically to the federal amendments, nevertheless, as appears on pages 289–290 of 130 Ohio St., 199 N.E. 187, the Fourteenth Amendment (as well as the Fifth Amendment) was given consideration. On page 289 of 130 Ohio St., 199 N.E. 187, 189, the court say: "Under the Fourteenth Amendment of the Federal Constitution, neither the state nor the municipality, which is an arm of the state, can 'deprive any person of life, liberty, or property, without due process of law.'"

And on page 290 of 130 Ohio St., 199 N.E. 187, reference is made to the Fifth Amendment in a quotation from the case of Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469.

From the conclusion reached it must be presumed that the Supreme Court of Ohio found that the ordinance did not violate either federal amendment. This decision is entitled to and should command the respect of this court, King Mfg. Co. v. City Council of Augusta, 277 U.S. 100, 114, 48 S.Ct. 489, 494, 72 L.Ed. 801; Concordia Ins. Co. v. School Dist., 282 U. S. 545, 552, 51 S.Ct. 275, 277, 75 L.Ed. 528; Coombes v. Getz; 285 U.S. 434, 441, 52 S.Ct. 435, 76 L.Ed. 866; Dial v. Chatman (C.C.A.) 70 F.(2d) 21, 23; but (though sitting within the state) this court is not bound by it upon the federal questions here involved, 25 C.J. 849; Bryan v. Barriger (D.C.) 251 Fed. 328–329; City of Philadelphia ex rel. Furey v. Transit Co. (D.C.) 27 F.(2d) 439, 440; nor upon these questions is it absolved from the duty of exercising an independent judgment, Bradley v. Fallbrook Irrigation Dist. (C. C.) 68 Fed. 948.

■ If the ordinance is valid, it is so because it falls within the police power. Like Zanesville (Wilson v. Zanesville, supra, 130 Ohio St. 286, at page 289, 199 N.E. 187, 189), Cincinnati "is a charter or home rule city, and in the exercise of its local police power has the same authority to adopt and enforce ordinances as a city which has not adopted an independent charter, namely, 'such local police, sanitary and other similar regulations as are not in conflict with general laws.'" In the Zanesville Case the court held (at 289 of 130 Ohio St., 199 N.E. 187, 189) that: "the provisions under consideration are not in conflict with general laws. There is, therefore, no question of · the authority of the municipality to pass this legislation provided it is within a proper exercise of the police power."

■ The police power of the state or municipality, acting as the arm of the state, is an attribute of sovereignty. A city has a wide discretion in determining what precautions, in the public interest, are necessary or appropriate, and the validity of an ordinance or regulation passed under the police power depends primarily on whether it is reasonable or arbitrary. 6 R.C.L. p. 236, § 226.

■ It is conceded that the police power is not unlimited and must not be arbitrarily exercised, and that, while a statute or ordinance is presumed to be valid, a mere declaration therein that it is enacted to protect public safety, health, or welfare will not render the statute valid as being within the police power unless there is some reasonable relation between such purpose and the regulation prescribed. These principles are well established. McLean v. Arkansas, 211 U.S. 539, 547, 29 S.Ct. 206, 53 L.Ed. 315; Mugler v. Kansas, 123 U.S. 623, 661, 8 S.Ct. 273, 31 L.Ed. 205; Home-Telephone & Telegraph Co. v. Los Angeles, 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510.

■ It is equally true, as stated by the court in McLean v. Arkansas, supra, (at pages 547–548 of 211 U.S., 29 S.Ct. 206, 208, 53 L.Ed. 315), that: "While the courts can set aside legislative enactments upon this ground, [just above set out] the principles upon which such interference is warranted are as well settled as is the right of judicial interference itself. The legislature, being familiar with local conditions, is, primarily, the judge of the necessity of such enactments. The mere fact that a court may differ with the legislature in its views of public policy, or that judges may hold views inconsistent with the propriety of the legislation in question, affords no ground for judicial interference, unless the act in question is unmistakably and palpably in excess of legislative power. * * * If the law in controversy has a reasonable relation to the protection of the public health, safety, or welfare, it is not to be set aside because the judiciary may be of opinion that the act will fail of its purpose, or because it is thought to be an unwise exertion of the authority vested in the legislative branch of the government." And here, as there, it may be stated and asked (at page 548 of 211 U.S., 29 S.Ct. 206, 208, 53 L.Ed. 315): "We take it that there is no dispute about the fundamental propositions of law which we have thus far stated; the difficulties and differences of opinion arise in their application to the facts of a given case. Is the act in question an arbitrary interference with the right of contract, and is there no reasonable ground upon which the legislature, acting within its conceded powers, could pass such a law?"

■ The ordinance is presumed to be valid and the burden is upon plaintiffs to

show that its provisions are so clearly unreasonable and arbitrary as to amount to the depriving of plaintiffs of their property without due process of law. New Orleans Public Service Co. v. City of New Orleans, 281 U.S. 682, 686, 50 S.Ct. 449, 450, 74 L.Ed. 1115; Nebbia v. New York, 291 U.S. 502, 538, 54 S.Ct. 505, 516, 78 L.Ed. 940, 89 A.L.R. 1469; Sinking Fund Cases (Union P. R. Co. v. U. S.), 99 U.S. 700, 718, 25 L.Ed. 496.

Practically the same legal questions were raised in the case of Holsman v. Thomas, 112 Ohio St. 397, 147 N.E. 750, 752, 39 A.L.R. 760, as are raised here. The ordinance there under consideration was one having reference to selling jewelry by auction. There, as here, it was charged that the ordinance violated the Fourteenth Amendment. Auctioneering is a lawful business. People v. Gibbs, 186 Mich. 127, 135, 152 N.W. 1053, Ann.Cas.1917B, 830. In the Holsman Case plaintiff claimed that the ordinance did not regulate, but prohibited, the auctioning of jewelry, and it was claimed, as is claimed here, that it was confiscatory "and hence deprives him [plaintiff] of his right to use and enjoy his property without due process of law." To this, the Supreme Court of Ohio (by Allen, J.) (at pages 403–404 of 112 Ohio St., 147 N.E. 750, 752, 39 A.L.R. 760) say: "The law is not confiscatory for it leaves the plaintiff in possession of his property and entitled to and enabled to dispose of it. It only requires that the plaintiff dispose of his property subject to the provisions of the act. Hence there is no taking of property involved in the case; there is an incidental inconvenience and possibly some loss arising to the plaintiff in error from the enforcement of the regulations. Plaintiff in error seems to consider that he should be immune from this inconvenience and possible loss because of the existence of the constitutional provisions before quoted. Under the decisions of the United States, and of this state, it is held that the inalienable rights given to the citizens of this state in article I of the Ohio Constitution, and the equal protection and benefit guaranteed them in that document as well as in the federal Constitution, do not render the citizens immune from the operation of the police power. If the ordinance is valid, it is so because it falls within the police power, and if within the police power the fact that plaintiff's trade is regulated thereby, and that incidental loss may result to him therefrom, does not impair the validity of the ordinance. Does the ordinance fall within the police power? Now, the police power relates not merely to the public health and to public physical safety, but also to public financial safety. Laws may be passed within the police power to protect the public from financial loss."

In the instant proceedings an effort was made by plaintiffs to show by the testimony of the director of safety and the chief of police of the City of Cincinnati that barbershops which had theretofore kept open after the restricted hours in the ordinance—some all night—had been conducted in an orderly way and without presenting any police problem. The argument from this is that the ordinance bears no relationship to public safety but, as pointed out by the Supreme Court of Ohio, in the decision just above quoted from, the police power relates, not alone "to public physical safety," but laws may be passed within the police power to protect the public safety in other respects, as, for example, in the Holsman Case, "public financial safety," or to "protect the public from financial loss." Here the city claims, with merit, that the public safety referred to in the ordinance does not mean safety from acts of violence or disturbances of the peace, but safety to the welfare and health of the public with whom the barber comes in contact. In the Holsman Case the Supreme Court of Ohio held that the ordinance there under consideration did not violate either the State or Federal Constitution.

In the instant proceedings there was also some effort made by plaintiffs to show that the ordinance was discriminatory in that some other lines of business were permitted to open up or remain open before and after the hours fixed in the ordinance for barbershops. Reference was made to dentists' offices, newspaper offices, restaurants, drugstores, and other lines. Such a contention was also made in the Holsman Case, supra, and there answered. On pages 406, 407 (of 112 Ohio St., 147 N.E. 750, 753, 39 A.L.R. 760) the court say (what is applicable here): "There is a reason for rigid regulation of this business. * * * Its validity cannot be attacked merely because its scope was not extended to cover the entire field of possible abuses of this kind."

In the Nebbia Case, supra, 291 U.S. 502, at page 525, 54 S.Ct. 505, 510, 78 L.Ed. 940, 89 A.L.R. 1469, the court say: "And

the guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained. It results that a regulation valid for one sort of business, or in given circumstances, may be invalid for another sort, or for the same business under other circumstances, because the reasonableness of each regulation depends upon the relevant facts."

In Great Atlantic & Pacific Tea Co. v. Grosjean, 301 U.S. 412, 57 S.Ct. 772, at page 777, 81 L.Ed. 1193 (June 1, 1937), the Supreme Court of the United States say: "In the exercise of its police power the state may forbid, as inimical to the public welfare, the prosecution of a particular type of business, or regulate a business in such manner as to abate evils deemed to arise from its pursuit."

Again, as stated by the Supreme Court of Ohio in Olds v. Klotz, 131 Ohio St. 447, at pages 450, 451, 3 N.E.(2d) 371, 373: "It is important to keep in mind certain fundamental differences between a barber shop and a retail grocery store. The barber shop is a place where services rendered are of a personal nature. The cutting and shampooing of the hair and the shaving and massage of the face are the most common. All of these are performed in the home, some measurably, others extensively. They are not absolute essentials. * * * In each case presented the court must draw the line of demarcation. Courts do not attempt to define police power with exactness, and inevitably the individual case must stand upon its own footing."

Plaintiffs insist that in the Olds Case (decided July 8, 1936) the Supreme Court of Ohio reversed or, in effect, overruled its earlier decision in the case of Wilson v. Zanesville, supra.

The court cannot agree with this contention. The Zanesville Case is referred to in the Olds Case, and it is apparent from a reading of the two that the Supreme Court intended to and does clearly distinguish the one, and the law applicable thereto, from the other. When the Zanesville Case was decided by the State Court of Appeals, that court, Zanesville v. Wilson, 51 Ohio App. 433, at pages 438, 439, 440, 1 N.E.(2d) 638, 640, fully considering whether the ordinance violated any of the provisions of the Federal Constitution, held the ordinance to be valid and stated, inter alia: "What we hereinafter propose to say is pertinent to the business of barbering, and to no other. In the first place we will say that the business is perfectly legitimate, and is hardly subject to regulation upon any moral ground, as are dance halls, pool-rooms or other like places. Neither may that business be likened to a mercantile establishment where the public is invited to shop. It is in one sense professional in its character of service, that is, its purpose is to do for those of the public who enter a purely personal service, wherein cleanliness and sterilization of implements and tools of the trade are matters of public concern, without which patrons may become the innocent victims of communicable disease, or the unintentional conveyors of such to those who are not patrons. In congested communities like Zanesville barbers may not know all their patrons, and unless care be taken skin and blood diseases may be easily communicated by the artisan's own careless act."

In the recent case of West Coast Hotel Co. v. Parrish, decided March 29, 1937, 300 U.S. 379, 57 S.Ct. 578, at pages 585, 586, 81 L.Ed. 703, 108 A.L.R. 1330, the Supreme Court of the United States say: "The argument that the legislation in question constitutes an arbitrary discrimination, because it does not extend to men, is unavailing. This Court has frequently held that the legislative authority, acting within its proper field, is not bound to extend its regulation to all cases which it might possibly reach. The Legislature 'is free to recognize degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be clearest.' If 'the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.' There is no 'doctrinaire requirement' that the legislation should be couched in all embracing terms."

Discrimination is claimed also for the reason that "beauty parlors" were not included within the ordinance. In McDermott v. Seattle (D.C.) 4 F.Supp. 855, it was held that an ordinance similar to the one at bar was not discriminatory upon this basis. The court (at page 856 of 4 F.Supp.) stated: "The charge that the ordinance is discriminatory in that beauty parlors and hair-dressing establishments

are not included, fails." The McDermott Case was before the court on a motion to dismiss. In that case the court did enjoin the city temporarily from enforcing the ordinance, "pending this action."

The court finds that the ordinance in question in the instant cases is not discriminatory.

There is no claim in the instant proceedings that there is any discrimination as between the barbershops or the barbers themselves. That is to say, it is conceded that the ordinance applies to all barbershops alike within the City of Cincinnati, irrespective of whether they are large or small, white or colored, union or nonunion, and regardless of their location.

The record shows that more than one-half of the barbershops in Cincinnati are one-man shops; that there are quite a number of two-chair shops, in which the shopowner works with one assistant; while Mr. Feldman (plaintiff in No. 1005) employs fifteen or more barbers and the Terminal Barber Shops, Inc. (plaintiff in No. 1007), is one of a chain of fifty-two shops located in various cities employing in its local unit seventeen or more men. No barber, or barbershop, in Cincinnati has any greater rights than have each of the plaintiffs, respectively, under the ordinance.

In the last analysis, plaintiffs rely in large measure on decisions that have been rendered by a number of state courts (there has been no decision by a federal court except the McDermott Case, supra), where ordinances, to all intents and purposes, identical with the one here under consideration, have been held unconstitutional, and therefore void. Decisions to this effect have been rendered by courts of last resort in the following cases: Ganley v. Claeys, 2 Cal.(2d) 266, 40 P.(2d) 817; Ex Parte Jentzsch, 112 Cal. 468, 44 P. 803, 32 L.R.A. 664; Chaires v. Atlanta, 164 Ga. 755, 139 S.E. 559, 55 A.L.R. 230; Alexandria v. Hall, 171 La. 595, 131 So. 722; Knight v. Johns, 161 Miss. 519, 137 So. 509; State ex rel. Newman v. Laramie, 40 Wyo. 74, 275 P. 106; Patton v. Bellingham, 179 Wash. 566, 38 P.(2d) 364, 98 A.L.R. 1076; State v. Johannes, 194 Minn. 10, 259 N.W. 537; City and County of Denver v. Schmid, 98 Colo. 32, 52 P.(2d) 388; Eanes v. Detroit, 279 Mich. 531, 272 N.W. 896. Substantially all of these cases (except Eanes v. Detroit, decided on April 29, 1937—subsequent to the Zanesville Case) were considered and referred to by the Supreme Court of Ohio (at page 293 of 130 Ohio St. 199 N.E. 187) in the Zanesville Case.

It is important and significant, however, that (as was true in the Zanesville Case) in several of those cases the court was divided and in some dissenting opinions were written. In the Bellingham Case, 179 Wash. 566, 38 P.(2d) 364, 98 A.L.R. 1076), the Supreme Court divided five to four. Extensive dissenting opinions (179 Wash. 566, 38 P.(2d) 364, at pages 368–372, 98 A.L.R. 1076) supporting the validity of the ordinance were written by Justices Blake and Geraghty, concurred in by Justices Holcomb and Millard. In the Johannes Case, 194 Minn. 10, 259 N.W. 537, at page 542, Chief Justice Devaney wrote a dissenting opinion supporting the ordinance. In the Schmid Case, 98 Colo. 32, 52 P.(2d) 388, Justices Hilliard and Bouck dissented. In the latest decided case, Eanes v. Detroit, 279 Mich. 531, 272 N.W. 896, at pages 899, 910, dissenting opinions were written by Justices Bushnell and Potter.

Typical of some of the views held by the dissenting judges (which are the views of the majority in the Zanesville Case) are those expressed by Justice Bushnell in the Eanes Case, supra. He says (279 Mich. 531, 272 N.W. 896, at pages 899, 900) in part: "It must be conceded, as stated by Mr. Justice Geraghty in his dissenting opinion in Patton v. City of Bellingham, * * * 'that, if the validity of the ordinance here challenged is to be tested by the weight of past judicial opinion, the conclusion must be against the ordinance.' However, many of the cases involving similar statutes and ordinances were determined by divided courts; the one just cited being a five to four decision. * * * By working their employees in two or three shifts, the larger downtown and chain barbershops can keep open for as many hours as they desire, and in one instance, as is shown by this record, for as many as twenty-four hours. In order that the owners and employees of the one, two, or three chair barbershops may exist, they must meet this competition, thereby depriving themselves of needed rest, recreation, and leisure. As was said by Mr. Justice Blake, dissenting in the Patton Case, supra: 'The power of the government to enact legislation to alleviate such conditions is inherent. Such legislation is grounded in the government's

540

"right to protect all persons from the physical and moral debasement which comes from uninterrupted labor." * * * I cannot find any prohibition in either Constitution or charter against * * * the ordinance. * * * For the reasons hereinbefore given, I believe the regulation of the hours of operation of barbershops is within the police power."

In this connection it is of particular interest to note the divergence of views as expressed by the respective courts in the case of Wilson v. Zanesville, supra. This case originated in the municipal court of the City of Zanesville, Ohio. As earlier stated herein, it came before the court on a demurrer. Judge Knapp, of the municipal court, on December 20, 1934, held the ordinance unconstitutional. His decision is reported in 1 Ohio Op. 330 (33 Ohio N.P.(N.S.) 59). Error was prosecuted to the common pleas court of Muskingum county, Ohio, which court affirmed the judgment of the municipal court, without opinion, as appears in Zanesville v. Wilson, 51 Ohio App. 433, 434, 1 N.E.(2d) 638. The cause was then taken on error to the Court of Appeals (5th District), which court, on March 30, 1935, in a written opinion (51 Ohio App. 433, 1 N.E.(2d) 638), concurred in by all the judges (three in number), reversed the judgment of the court below, holding, as hereinbefore mentioned, that the ordinance was not unconstitutional. It was the judgment rendered by the Court of Appeals that the Supreme Court of Ohio (five judges concurring—two dissenting) affirmed in the so-called Zanesville Case. A wide diversity of opinion among the Ohio judges is thus apparent.

In Falco v. Atlantic City, 99 N.J. Law 19, 122 A. 610, an ordinance similar in all respects to the one at bar was held valid. It is true that in New Jersey the state Legislature had by statute (Comp.St. Supp.N.J.1924, § *136—1420A(1) specifically authorized municipal corporations "to pass, enforce, alter or repeal ordinances to regulate the opening and closing of barber shops on Sundays and legal holidays, also on week days," but the validity of the statute upon which the ordinance was based was challenged, as well as the ordinance itself. "The points made [at page 20 of 99 N.J.Law, 122 A. 610] are that the statute is in violation of the Fourteenth Amendment to the federal Constitution; * * * that the ordinance is unreasonable; * * * and that the declaration in the ordinance that it is 'necessary in order to protect the general welfare and health of the people frequenting and using barber shops,' is * * * 'not well founded.'" The New Jersey court not only held the ordinance valid, but also that the statute (at page 21 of 99 N.J. Law, 122 A. 610) "is well within the limits of the general police power."

The court further held that the ordinance was not unreasonable (at page 21 of 99 N.J.Law, 122 A. 610, 611) saying: "It seems probable that one reason for the legislation upon which it rests was to enable municipal authorities to fix a definite time within which their inspectors might readily and adequately perform their duties with respect to such places. Barber shops are public places, frequented by all classes. Sanitary supervision thereof is very generally regarded as necessary, and powers conferred to that end should receive liberal construction so that they may be rendered effective. * * * To allow barber shops to remain open to the public at all hours of the night might well be regarded as rendering ready and adequate inspection inconvenient or difficult, or even impossible, and consequently detrimental to public health. Such considerations are for the fair determination of the municipal authorities, and we cannot say that the regulation in the instant case is unreasonable."

Sections 1081-1 to 1081-27, inclusive, of the General Code of Ohio (known as the Ohio Barber Law) provides for the regulation and inspection of barbershops in the State of Ohio, it being provided in section 1081-5 that members of the State Board, or their agents or assistants, may inspect "any barber shop or barber school at any time *during business hours.*" (Italics ours.)

The views expressed by the New Jersey court seem applicable here, since the proof shows that there are approximately four hundred barber shops in the City of Cincinnati, ranging, as hereinbefore stated, from those having a considerable number of chairs down through the various sizes, to those which are conducted by one man—some of the latter in their own homes.

In view of the conflict of opinion between the Supreme Court of Ohio and the courts of last resort of other states, and of the differences of opinion within the courts of last resort themselves between

the judges of those courts, as well as between the respective courts in the state of Ohio, all as shown in the reported cases, this court cannot say that no reasonable doubt exists as to the invalidity of the ordinance, nor can it find (as the Supreme Court in McLean v. Arkansas, 211 U.S. 539, 547, 29 S.Ct. 206, 208, 53 L.Ed. 315 say must be done before it can be declared invalid) that it "is unmistakably and palpably in excess of legislative power."

"Unless there is a clear and palpable abuse of power, the court will not substitute its judgment for legislative discretion." Allion v. Toledo, 99 Ohio St. 416, 124 N.E. 237, 238, 6 A.L.R. 426 (Syl.).

Certainly, it cannot be said that the ordinance, beyond all rational doubt, is not a proper exercise of the police power, or that its enactment does not fall within the police power of the city.

As stated by the Supreme Court (at pages 297–298 of 130 Ohio St., 199 N.E. 187, 192) in the Zanesville Case: "The police power is not static and must ever be exercised in the light of changing conditions. To continue to apply principles in accord with circumstances no longer existing and to refuse to curtail new evils from fear of demolishing outworn precedents is to close the eyes to the necessities of the times and thus fail to give to constitutional guaranties their true import. Altered social surroundings may impart to long standing constitutional provisions a 'new content and new meaning' and require an application and interpretation previously unthought of. Where new evils detrimental to public health, morals, and safety spring up due to the march of civilization, the evils must be met by proper police regulations, and such regulations are of necessity within the police power."

The complexities of modern civilization require many restrictions on personal and property rights, and "that which was not public welfare fifty years ago, under the then conditions of society, morals, necessities, and commercial conditions, may in this present age be considered public welfare." Ex Parte Hawley, 12 Ohio N.P.(N.S.) 1, 3, affirmed 85 Ohio St. 494, 98 N.E. 1126; Hawley v. Walker, 232 U.S. 718, 34 S.Ct. 479, 58 L.Ed. 813. "The Constitution must be ever expanding to meet the exigencies of progress." 51 Ohio App. 433, 437, 1 N.E.(2d) 638, 640.

In Stroehmann v. Insurance Co., 300 U.S. 435, 57 S.Ct. 607, at page 609, 81 L. Ed. 732, wherein it was claimed and denied that doubt existed as to the meaning of certain language, the Supreme Court, as showing and emphasizing that a doubt did exist, say: "The arguments of counsel have emphasized the uncertainty. The District Court and the Circuit Court of Appeals reached different conclusions, and elsewhere there is diversity of opinion."

The instant cases reveal a situation quite similar to that existing in the Stroehmann Case, so much so as to lead this court to entertain very grave doubt as to the invalidity of the ordinance. This being true, it is bound to resolve that doubt in favor of its validity.

In National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615 at page 621, 81 L.Ed. 893, 108 A.L.R. 1352, the Supreme Court say: "The cardinal principle of statutory construction is to save and not to destroy. We have repeatedly held that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the act. Even to avoid a serious doubt the rule is the same. Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 307, 44 S.Ct. 336, 337, 68 L.Ed. 696, 32 A.L.R. 786; Panama R. R. Co. v. Johnson, 264 U.S. 375, 390, 44 S.Ct. 391, 395, 68 L.Ed. 748; Missouri Pacific R. R. Co. v. Boone, 270 U.S. 466, 472, 46 S.Ct. 341, 70 L.Ed. 688; Blodgett v. Holden, 275 U.S. 142, 148, 276 U.S. 594, 48 S.Ct. 105, 107, 72 L.Ed. 206; Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 346, 48 S.Ct. 194, 198, 72 L.Ed. 303."

In Kelley v. Judge, 239 Mich. 204, at page 214, 214 N.W. 316, 320, 53 A.L.R. 273, the court say: "In case of doubt courts will not interfere to declare a regularly enacted statute unconstitutional."

And, finally, as stated by the Supreme Court of the United States in Sinking-Fund Cases (Union P. R. Co. v. U. S.), 99 U.S. 700, at page 718, 25 L.Ed. 496, "Every possible presumption is in favor of the validity of a statute, [or ordinance] and this continues until the contrary is shown beyond a rational doubt. One

542

branch of the government cannot encroach on the domain of another without danger. The safety of our institutions depends in no small degree on a strict observance of this salutary rule."

█ Entertaining, as it does, doubt as to its invalidity and indulging, as it must, every presumption in its favor, the court finds that the ordinance is not discriminatory or unreasonable; that it has not been "shown beyond a rational doubt" that it violates any of the provisions of the Constitution of the United States, and that it is, therefore, a valid enactment. The prayer of defendants is granted in the respective cases.

An order may be drawn accordingly.